Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Debtor

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **PREFERRED READY MIX, LLC,** | § | **CASE NO. 21-33369-11** |
| | § | **Chapter 11** |
| **Debtor.** | § | |

## DEBTOR'S PLAN OF REORGANIZATION
## <u>UNDER SUBCHAPTER V OF CHAPTER 11</u>

Dated: January 4, 2022

## TABLE OF CONTENTS

Article I.        INTRODUCTION...................................................................................................4

Article II.       DEFINITIONS .....................................................................................................4

Article III.      VOTING ON THE PLAN AND OBJECTIONS ................................................7

Article IV.       BACKGROUND...................................................................................................8
    4.1       Background of the Debtor and Events Leading to Bankruptcy ...........................8
    4.2       Significant Events Since the Petition Date..........................................................9
    4.3       Assets of the Debtor .........................................................................................10
    4.4       Liabilities of the Debtor ....................................................................................10
    4.5       Tax Consequences of the Plan ..........................................................................10

Article V.        LIQUIDATION ANALYSIS ...............................................................................12

Article VI.       PLAN OF REORGANIZATION..........................................................................12
    6.1       Classification of Claims and Interests................................................................12
    6.2       Claims and Interests Impaired Under the Plan ...................................................13
    6.3       Treatment of Unclassified Claims, Administrative Expense Claims, Priority
              Claims, and U.S. Trustee Fees ..........................................................................13
    6.4       Treatment of Classified Claims and Interests Under the Plan .............................14
    6.5       Implementation of the Plan ...............................................................................15
    6.6       Feasibility of the Plan........................................................................................15
    6.7       Provisions Regarding Distributions and Objections to Claims............................15
    6.8       Executory Contracts .........................................................................................16
    6.9       Default ..............................................................................................................17

Article VII.      RESERVATION OF CLAIMS .............................................................................17
    7.1       Reservation of Claims and Causes of Action......................................................17
    7.2       Return of Fraudulent Transfers .........................................................................17

Article VIII.     EFFECT OF CONFIRMATION, DISCHARGE, RELEASES
                  AND INJUNCTION ............................................................................................18
    8.1       Vesting of Property ...........................................................................................18
    8.2       Plan Creates New Obligations............................................................................18
    8.3       Legal Binding Effect ..........................................................................................18
    8.4       Discharge..........................................................................................................18
    8.5       Satisfaction of Claims and Interests ...................................................................18
    8.6       Temporary Injunction........................................................................................18
    8.7       Modification of the Plan.....................................................................................19
    8.8       Retention of Jurisdiction ...................................................................................19

Article IX.       MISCELLANEOUS PROVISIONS .....................................................................20
    9.1       Request for Relief Under Bankruptcy Code § 1129(b).......................................20
    9.2       Headings...........................................................................................................20

| | | |
|---|---|---|
| 9.3 | Due Authorization | 20 |
| 9.4 | Further Assurances and Authorizations | 21 |
| 9.5 | Applicable Law | 21 |
| 9.6 | No Interest | 21 |
| 9.7 | Post-Confirmation Actions | 21 |
| 9.8 | Notices of Default | 21 |
| 9.9 | Notices | 21 |
| 9.10 | Payment Dates | 22 |
| 9.11 | De Minimis Distribution | 22 |

EXHIBITS:

    Exhibit 1 – Projections

    Exhibit 2 – Monthly Operating Reports (to be provided)

# ARTICLE I.  INTRODUCTION

This Plan is proposed by Preferred Ready Mix, LLC (the "Debtor"). On November 11, 2021, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. The Debtor amended its petition to one under Subchapter V of title 11 on November 24, 2021.  This *Debtor's Plan of Reorganization Under Subchapter V of Chapter 11* is provided pursuant to Bankruptcy Code to all the Debtor's known creditors and other parties in interest. Under the Plan the Debtor will pay Allowed Secured Claims in full over 60 months and will pay 25% of Allowed Unsecured Claims over 36 months. The details of the Plan are set out in Article VI of this document.

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)**

# ARTICLE II.  DEFINITIONS

Except as expressly provided herein or unless the context otherwise requires, the terms set forth in this Article II shall have the following meanings when used in initially capitalized form in this Plan. Any term used in initially capitalized form that is not defined herein, but that is defined in the Bankruptcy Code, shall have the meaning assigned to such term in the Bankruptcy Code. Such meanings shall be equally applicable to both the singular and plural forms of such terms.

**2.1** "**Administrative Expense Claim**" means an administrative expense or claim described in Bankruptcy Code § 503 and entitled to administrative priority pursuant to Bankruptcy Code § 507(a)(1), including, but not limited to, Fee Claims.

**2.2** "**Allowed Amount**" means the amount of any Allowed Claim.

**2.3** "**Allowed Claim**" means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that: (i) a Proof of Claim or request for payment was timely filed, or, with leave of the Bankruptcy Court, late filed and as to which no objection has been timely filed with the Bankruptcy Court, or, if filed, is allowed by a Final Order, unless otherwise provided in this Plan; (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and no objection has been timely filed or, if filed, is allowed by a Final Order; or (iii) with respect to an Administrative Expense Claim or Fee Claim, the Administrative Expense Claim or Fee Claim has been approved by a Final Order upon notice and application to the Bankruptcy Court.

**2.4** "**Assets**" means property of the Estate.

**2.5** "**Avoidance Actions**" means any and all rights, claims, and causes of action which a trustee, Debtor, or other appropriate party in interest would be able to assert on behalf of the Estate under applicable state statutes or the avoidance provisions of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code §§ 506, 542-551, and 553.

**2.6**     "**Bankruptcy Case**" or "**Case**" means this bankruptcy case: Case No. 21-33369-11 styled as Preferred Ready-Mix, LLC, pending before the Bankruptcy Court.

**2.7**     "**Bankruptcy Code**" or "**Code**" means the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

**2.8**     "**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, or other such court that may have jurisdiction with respect to the reorganization of the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

**2.9**     "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended, and "**Bankruptcy Rule**" refers to a specific rule therein.

**2.10**     "**Bar Date**" means February 14, 2022, the deadline established by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(3), after which any Proof of Claim may not be timely filed, except Claims held by governmental agencies.

**2.11**     "**Business Day**" shall mean any day that is not a Saturday, Sunday, or one of the legal holidays listed in Bankruptcy Rule 9006(a).

**2.12**     "**Claim**" shall have the meaning set forth in Bankruptcy Code § 101(5).

**2.13**     "**Claimant**" or "**Creditor**" means the holder of a Claim or interest in the Assets.

**2.14**     "**Class**" means any class into which Claims are classified pursuant to Section 6.01 of the Plan. Each subclass of a class shall be treated as a separate class.

**2.15**     "**Confirmation**" means the Bankruptcy Court's entry of the Confirmation Order.

**2.16**     "**Confirmation Date**" means the date on which the Order confirming this Plan is entered.

**2.17**     "**Confirmation Hearing**" means the hearing or hearings held before the Bankruptcy Court in which the Debtors will seek Confirmation of this Plan.

**2.18**     "**Confirmation Order**" means the Order confirming this Plan.

**2.19**     "**Contested**" when used with respect to a Claim, means a Claim against the Debtor: (i) that is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated; (ii) that is listed in the Debtor's Schedules of Assets and Liabilities as undisputed, liquidated, and not contingent and as to which a Proof of Claim has been filed with the Bankruptcy Court, to the extent the Proof of Claim amount exceeds the scheduled amount; (iii) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (iv) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

**2.20    Debtor**" means Preferred Ready-Mix, LLC, the Debtor herein. Where the context so requires, "**Debtor**" shall also include the Reorganized Debtor.

**2.21    "Disputed"** with respect to a Claim means either: (i) a Claim which has been objected to by the Debtor; or (ii) a Claim that is listed on the Debtor's bankruptcy schedules as "disputed, contingent or unliquidated" and for which such Creditor or Interest holder has not filed a Proof of Claim.

**2.22    "Effective Date"** means the thirtieth (30th) day after the Confirmation Date.

**2.23    "Estate"** means the bankruptcy estate of the Debtor in this Case.

**2.24    "Fee Claim"** means a Claim under Bankruptcy Code §§ 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in this Bankruptcy Case.

**2.25    "Fee Application"** means an application filed with the Bankruptcy Court for allowance of a Fee Claim.

**2.26    "Final Order"** means an Order as to which any appeal that has been taken has not been stayed following the expiration of the time for appeal or has been resolved, or as to which the time for appeal has expired.

**2.27    "Impaired"** means the treatment of an Allowed Claim or Interest pursuant to the Plan unless, with respect to such Claim or Interest, either: (i) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after occurrence of a default, the Debtor (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in § 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim or Interest as such maturity existed before such default; (C) compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; or (iii) the Plan provides that on the Effective Date, the holder of such Claim or Interest receives, on account of such Claim or Interest, cash equal to the Allowed Amount of such Claim or Interest.

**2.28    "Insider"** has the meaning provided by § 101(31) of the Bankruptcy Code.

**2.29    "Interest"** means any equity or ownership interest in the Debtor.

**2.30    "Lien"** means any charge against or interest in property to secure payment of debt or performance of an obligation and includes a judicial lien, security interest, and deed of trust, mortgage and property tax lien.

**2.31    "Order"** means an Order of the Bankruptcy Court.

**2.32**    "**Petition Date**" means October 14, 2021, the date on which the Debtor filed its voluntary petition under Subchapter V of Chapter 11 of the Bankruptcy Code.

**2.33**    "**Plan**" means this *Plan of Reorganization Under Subchapter V of Chapter 11*, including any amendments, modifications or corrections made thereto pursuant to the Bankruptcy Code.

**2.34**    "**Priority Tax Claim**" means a Claim entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

**2.35**    "**Proof of Claim**" means a written statement setting forth a Creditor's Claim filed in this Case and conforming substantially to the appropriate official form.

**2.36**    "**Schedules and Statements**" means and refers to the Debtor's bankruptcy schedules A/B, D-H and Statement of Financial Affairs filed by the Debtor, and any amendments thereto.

**2.37**    "**Secured Claim**" means a Claim that is secured within the meaning of Bankruptcy Code § 506(a).  Should the value of the collateral securing a Secured Claim be less than the amount of the Claim, the Claim will be bifurcated into a Secured Claim equal to the value of the collateral and an Unsecured Claim for the remainder.

**2.38**    "**Unsecured Claim**" means any Claim that is not a Secured Claim or an Administrative Expense Claim and that is not entitled to priority treatment under Bankruptcy Code § 507.

## ARTICLE III.  VOTING ON THE PLAN AND OBJECTIONS

### 3.1    Who May Vote

You are entitled to vote on the Plan unless:

      (1)      your Claim or Interest is Disputed (as defined herein);

      (2)      your Class receives no distribution (presumed to reject the Plan);

      (3)      your Class is "unimpaired" (presumed to accept the Plan – *See* Sections 6.01 and 6.02 to see if your Class is Impaired or unimpaired); or

      (4)      your Claim is unclassified (and thus required by law to be paid in full).

If your Claim or Interest is Disputed, then you must file a motion and have it allowed for voting purposes (you must do that soon so that your motion can be heard before votes are counted. *See* Bankruptcy Rule 3018(a)).

### 3.2  How to Vote

Fill out and return the attached ballot (if you are entitled to vote) **by the deadline** and according to the other instructions in the enclosed order regarding voting and procedures.

### 3.3  Effect of Vote

After a plan of reorganization has been filed, it must either be accepted by holders of claims against, or interests in, the debtor, or be found by the Court not to discriminate unfairly and that it is fair and equitable with respect to each class of claims or interests that is impaired under the plan or that has not accepted the plan.

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. A Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.

### 3.4  Who May Object

Even if you are not entitled to vote, you may object to Confirmation of the Plan if you believe that the requirements for Confirmation are not met (and if you are a party in interest in this bankruptcy case). For the deadlines and procedures to object, see the enclosed order.

## ARTICLE IV.  BACKGROUND

### 4.1  Background of the Debtor and Events Leading to Bankruptcy

The Debtor is in the business of providing concrete delivery services for commercial and residential concrete providers. The Debtor filed this Bankruptcy Case due to a receivership which had resulted in the seizure of the Debtor's equipment and trucks and put the Debtor out of business. The receivership relates to a judgment taken against the Debtor which the Debtor is still disputing.

The Debtor's business was formed on March 19, 2019 as an LLC with 3 members: Robert Foran, Lincoln Catchings, III, and Matthew Tyson, each having a 1/3 ownership interest. Each member agreed to make capital contributions to the business. Matthew Tyson, however, did not perform his obligations to the business and his ownership interest was withdrawn on March 18, 2021. Matthew Tyson was removed based on allegations against him of fraud, conspiracy to commit fraud, embezzlement, theft, and diversion of funds exceeding $50,000.00. In lieu of criminal charges, the parties opted for removal of Matthew Tyson from the business. The remaining members, Robert Foran and Lincoln Catchings, III, each currently own a 50% ownership in the business. There is some dispute over the ownership raised by the Receiver but no proof has been provided indicating anything different than what is described herein.

On September 30, 2019 Cameron Roesle initiated a lawsuit against Robert Foran and a company under the name of Nolan Star Trucking, LLC, Cause No. 19-DCV-267154; Cameron

Roesle v. Robert Foran and Nolan Star Tucking, LLC; 400th Judicial District Court of Fort Bend County, Texas. A Default Judgment was entered on December 12, 2019. On June 24, 2020 Robert Berleth was appointed as Receiver. Robert Foran subsequently filed a Bill of Review on September 3, 2021 alleging he was never served with the Petition and Citation. Cameron Roesle filed an answer to the Bill of Review and Motion for Summary Judgment on September 27, 2021, and the summary judgment hearing was pending when the Bankruptcy Petition was filed.

On September 30, 2021, Robert Berleth filed an Emergency Ex Parte Application for Order Supplementing Order Appointing Receiver. Robert Berleth entered testimony from Matthew Tyson stating the Robert Foran was the sole owner of Preferred Ready-Mix LLC. Upon information and belief Robert Berleth relied on the testimony of Matthew Tyson to obtain a court order and seized at least eight (8) trucks in addition to the truck titles, supplies, equipment, electronics, tools, fuel cards, credit/debit cards, payment tickets, and other office items.

The loss of the items taken by Robert Berleth caused the business to become inoperable. The trucks were the sole source of revenue for the business. Robert Berleth had a receivership over Robert Foran personally and not over Preferred Ready-Mix. When Robert Foran was on the business property to seize the assets, Robert Berleth was informed that a prior receivership existed over Robert Foran personally in Tarrant County by Bill Hammer. Bill Hammer called Robert Berleth to inform him that seizure of the assets was not allowed in this case. Robert Berleth indicated that he was going to continue his seizure regardless of the prior court order. Prior to the bankruptcy filing Robert Berleth refusal to return the assets of the business and left the Debtor with no other options other than filing for bankruptcy on October 14, 2021.

Further, the downturn in business caused by the COVID-19 pandemic also impacted the Debtor's operations. The Debtor has a large amount of uncollectible accounts receivable due from customers ($622,241.26 – see Schedule AB), which further damaged Debtor's ability to stay current on amounts due to its creditors.

**4.2**   <u>**Significant Events Since the Petition Date**</u>

a.   On October 14, 2021, the Debtor filed a voluntary petition in the Bankruptcy Court thereby commencing this Case.

b.   On November 19, 2021, the Debtor amended its petition to designate the case as a SUB V case.

c.   On November 29, 2021, Allison Byman was appointed as the Sub-Chapter V trustee herein (the "Trustee").

d.   On November 24, 2021 the Court entered an order finding that with lender consent the request for use of cash collateral was moot.

e.   On December 14, 2021, the Court entered an *Order Granting Application by Debtor to Employ Counsel*, approving the employment of Joyce W. Lindauer Attorney, PLLC as the general bankruptcy counsel for the Debtor.

    **f.**    There are pending the following matters before the Court as of the date of the filing of this Plan: Motion to (1) Examine Debtor's Transactions with Attorney; (2) Cancel Debtor's Agreement with Attorney; (3) Disallow and Order Disgorgement of Excessive Fees; and (4) Impose Sanctions Against Attorney set for January 12, 2021 at 11:00 AM; and Status Conference set for January 12, 2021 at 11:00 AM.

    **g.**    The Debtor has filed its Sub V Status Report.

    **h.**    This Plan is timely filed.

### 4.3    <u>Assets of the Debtor</u>

The Debtor owned personal property as of the Petition Date with the approximate fair market value of $591,407.62. This consists of (i) cash, cash equivalents and financial assets in the amount of $1,307.62; (ii) deposits and pre-payments in the amount of $3,100.00, (iii) collectible accounts receivable in the amount of $6,000.00 (most of the receivables the Debtor has determined are not collectible); (iv) office furniture and furnishings of $11,000.00; (v) machinery, equipment and vehicles in the approximate amount of $490,000.00; and (vi) a shipping storage container and tools in the amount of $80,000.00. This is the Debtor's opinion of the value of its assets. There has been no formal appraisal done of these assets. The Debtor also had tools that were seized by the Receiver and are still missing and have not been returned.

### 4.4    <u>Liabilities of the Debtor</u>

According to Debtor's Schedules and the Proofs of Claim filed in this Case, the Debtor's liabilities (excluding Administrative Expense Claims) totaled $968,195.97 as of the Petition Date. The Debtor's liabilities, both Disputed and Undisputed, are summarized as follows:

    **a.**    **Administrative Expense Claims.** The Estate will be liable for certain Administrative Expense Claims pursuant to Bankruptcy Code §503(b) through the Confirmation Date, including Fee Claims of Joyce W. Lindauer Attorney, PLLC as the Debtor's bankruptcy counsel and the Sub V Trustee. Before the Debtor pays any Fee Claims, the Bankruptcy Court will have determined the reasonableness of such fees and expenses.

    **b.**    **Priority Tax Claims.** There are no Priority Claims filed.

    **c.**    **Secured Claims.** Total Secured Claims, based on the Debtor's Schedules and the Proofs of Claim on file, are $84,014.35. The Debtor reserves the right to object to any of the Secured Claims.

    **d.**    **General Unsecured Claims.** According to the Proofs of Claim and the Debtor's Schedules, the Debtor owes total Unsecured Claims of approximately $902,376.29. The Debtor reserves the right to object to any of the Unsecured Claims.

**4.5**     **Tax Consequences of the Plan**

    **a.**    **Disclaimer.** The Debtor does not purport to provide tax advice to the holders of Claims. The following is intended only as a summary of possible federal income tax consequences of the Plan and is not a substitute for careful tax planning with a tax professional. The following is for information purposes only and is NOT tax advice. The tax consequences are in many cases uncertain and may vary depending on a holder's individual circumstances. Accordingly, holders of Claims are urged to consult with their tax advisors about the federal, state, local, and foreign tax consequences of the Plan on their tax returns and tax liabilities.

    **b.**    **Tax Consequences.** Implementation of the Plan may result in federal income tax consequences to holders of Claims or Interests and the Debtor. Tax consequences to a particular Claim or Interest holder may depend on the particular circumstances or facts regarding the Claim or Interest. IRS Publication 908, entitled "Bankruptcy Tax Guide" provides valuable information regarding the federal income tax aspects of bankruptcy. The "Bankruptcy Tax Guide" is available directly from the IRS online at http://www.irs.gov/pub/irs-pdf/p908.pdf.

    **c.**    **Cancellation of Debt.** Cancellation of the Debtor's debt ("**COD**") is generally considered as taxable income of the Debtor. COD is the amount by which the indebtedness discharged exceeds any consideration given in exchange. However, there are exceptions which prevent COD from being treated as taxable income. To the extent the Debtor is insolvent or the Debtor is discharged in a bankruptcy proceeding, as is the case at bar, the Internal Revenue Code excludes COD from income. The statutory exclusion for COD from the Debtor's gross income in a Chapter 11 bankruptcy case arises where a discharge is granted by the Court as is requested in the Plan.

    **d.**    **Holders of Allowed Claims.** The tax consequences associated with distributions under the Plan to the holders of an Allowed Claim will depend on, among other things: (i) the consideration received or deemed to have been received by the holder of any such Claim; (ii) whether the Allowed Claim holder reports income on an accrual or cash basis; (iii) the taxable year in which any distributions under the Plan are received by the Allowed Claim holder; (iv) whether the Claim was Allowed or Contested/Disputed as of the Effective Date; and (v) whether such Allowed Claim holder had previously written the obligation off as bad debt. ALLOWED CLAIM HOLDERS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN.

## ARTICLE V.  FORCED OR CHAPTER 7 LIQUIDATION ANALYSIS

Section 1129(a)(7) of the Bankruptcy Code requires that a Chapter 11 plan of reorganization must provide at least as much value to each Impaired Creditor as could be realized in a liquidation under Chapter 7 of the Bankruptcy Code.

In determining whether the requirements of Section 1129(a)(7) of the Bankruptcy Code have been met, the first step is to determine the dollar amount that would be generated from a hypothetical liquidation of the Debtor's assets in Chapter 7. Such amounts must then be reduced by the costs and expenses of the liquidation. Further reductions would be required to eliminate cash and asset liquidation proceeds that would be applied to Secured Claims and amounts necessary to satisfy priority Claims that are senior to general Unsecured Claims (including Administrative Expense Claims that may result from the termination of the Debtor's business and the liquidation of its assets).

The Debtor's assets consist primarily of cash on hand, accounts receivable and machinery, vehicles and equipment. Based on the Debtor's opinion, these assets had a fair market value of approximately $591,407.62 on the Petition Date. In a forced liquidation under Chapter 7 the non-cash assets, upon information and belief, would be worth about 50% less because such a liquidation would increase the costs of administration of the estate, and the COVID-19 virus would result in a reduced auction sale value because the ability to conduct an actual auction sale is significantly reduced. These are only the Debtor's opinions.

Application of this asset value to the payment of Secured Claims would leave $211,689.46 funds available for Unsecured Claims.  Thus, in Chapter 7 it is likely that Unsecured Creditors would receive $211,689.46.  The Plan provides a greater return to the Unsecured Creditors than they would receive in a Chapter 7 case.

**This Plan proposes to pay one hundred percent (100%) of all Allowed Priority Tax Claims and Allowed Secured Claims, and 50% of Allowed Unsecured Claims against the Debtor.**

**This Plan does not contemplate a liquidation of the assets.**

## ARTICLE VI.  PLAN OF REORGANIZATION

### 6.1    Classification of Claims and Interests

Claims against the Debtor, excluding Administrative Expense Claims and Priority Tax Claims, are divided into the following Classes:

**Class 1 Claim:**  Allowed Secured Claims of BankDirect Capital Finance and Wayne C. Tyson.

**Class 2 Claim:**  Allowed Secured Claim of FundThrough USA, Inc.

**Class 3 Claim:** Allowed General Unsecured Claims, excluding Insiders.

**Class 4 Claim:** Allowed Unsecured Claims of Insiders.

**Class 5 Interests:** Allowed Equity Interest Holders.

### 6.2    Claims and Interests Impaired Under the Plan

Claims in Classes 1, 2 and 3 are Impaired and entitled to vote on this Plan. Class 4 Insider Claims are Impaired but not entitled to vote on the Plan.  Class 5 Interests are not Impaired.

### 6.3    Treatment of Unclassified Claims, Administrative Expense Claims, Priority Tax Claims, and U.S. Trustee Fees

    **a.**    **Unclassified Claims.** All Allowed Claims (except Administrative Expense Claims and Priority Tax Claims) are placed in Classes for all purposes, including voting on, confirmation of, and distributions under this Plan. In accordance with Bankruptcy Code § 1123(a)(1), Administrative Expense Claims and Allowed Priority Tax Claims have not been classified.

    **b.**    **Administrative Expense Claims.** Each holder of an Administrative Expense Claim under Bankruptcy Code § 503 shall receive either: (i) with respect to Administrative Expense Claims which are Allowed Claims on the Effective Date, the amount of such holder's Allowed Claim in one cash payment, within ten (10) days after the Effective Date, from the Debtor; (ii) with respect to Administrative Expense Claims which become Allowed Claims after the Effective Date, the amount of such holder's Allowed Claim, in one cash payment from the Debtor within ten (10) days after such Claim becomes an Allowed Administrative Expense Claim; or (iii) such other treatment agreed upon by the Debtor and such holder.

        **1.**    Fee Claims. Each professional person whose retention with respect to this Case has been approved by the Bankruptcy Court or who holds, or asserts, an Administrative Expense Claim that is a Fee Claim shall be required to file with the Bankruptcy Court a final fee application within sixty (60) days after the Effective Date and to serve notice thereof on all parties entitled to such notice. The failure to file timely any such application as required shall result in the Fee Claim being forever barred and discharged. A Fee Claim, with respect to which a Fee Application has been properly filed, shall become an Administrative Expense Claim only to the extent allowed by Final Order. Fee Claims shall be paid either: (i) with respect to Fee Claims which are Allowed Claims on the Effective Date, the amount of such holder's Allowed Claim in one cash payment, within ten (10) days after the Effective Date, from the Debtor; (ii) with respect to Fee Claims which become Allowed Claims after the Effective Date, the amount of such holder's Allowed Claim, in one cash payment from the Debtor within ten (10) days after such Claim

becomes an Allowed Fee Claim; or (iii) such other treatment agreed upon by the Debtor and such holder.

2.   <u>Administrative Expense Claims Bar Date.</u> Any other person or entity who claims to hold an Administrative Expense Claim (other than a Fee Claim) shall be required to file with the Bankruptcy Court an application within sixty (60) days after the Effective Date and to serve notice thereof on all parties entitled to such notice. The failure to file timely the application as required under this section) of this Plan shall result in the Claim being forever barred and discharged. An Administrative Expense Claim with respect to which an application has been properly filed and to which no timely objection has been filed or an objection has been filed but overruled by the Bankruptcy Court, shall become an Allowed Claim to the extent **such Claim is allowed by Final Order.**

c.   **Priority Tax Claims.** Any holder of an Allowed Priority Tax Claim within the meaning of Bankruptcy Code § 507(a)(8) will be paid in full over in 60 months from the Effective Date with interest thereon at the rate of 3% per annum.

## 6.4   <u>Treatment of Classified Claims and Interests Under the Plan</u>

**Class 1 Claims:  Allowed Secured Claims of BankDirect Capital Finance and Wayne C. Tyson in the amount of $56,856.14.** All Class 1 Claims shall be paid in full in 60 equal monthly installments of principal plus interest at the rate of 5% per annum. The payments shall begin on the first day of the first month following the Effective Date and continue on the first day of each subsequent month until the Claim is paid in full under the Plan.

This Claimant shall retain its pre-Petition Date Liens securing these Claims.  These Claims are IMPAIRED.

**Class 2 Claim:  Allowed Secured Claims of FundThrough USA, Inc is estimated to be $8,963.54.** Class 2 Claims shall be paid in full in 60 equal monthly installments of principal plus interest at the rate of 5% per annum. The payments shall begin on the first day of the first month following the Effective Date and continue on the first day of each subsequent month until the Claim is paid in full under the Plan.  This claim is IMPAIRED.

**Class 3 Claims: Allowed General Unsecured Claims, excluding Insiders are estimated to be $902,376.29.** Each of the Class 3 Claimants shall be paid a total of fifty percent (50%) of the amount of their Allowed Claims in equal monthly installments over 60 months. The payments shall begin on the first day of the first month following the Effective Date and continue for the next 59 months.  These Claims are IMPAIRED.

**Class 4 Claims: Allowed Unsecured Claims of Insiders.**  The Allowed Unsecured Claims of Insiders, if any, shall not be paid under this Plan.  These claims are IMPAIRED.

**Class 5 Interests: Allowed Equity Interest Holders.**   All Equity Interests shall be retained.  These Interests are not Impaired.

### 6.5    Implementation of the Plan

a.    **Source of Payments.** The Debtor intends to make all payments required under the Plan from available cash and income from the business operations of the Debtor.

b.    **Risk Factors.** *Consider carefully the factors set forth below and the other information set forth in this Plan prior to voting on the Plan. These risk factors should not, however, be regarded as constituting the only risks involved with the Plan and its implementation.*

1.    <u>Bankruptcy Considerations.</u> Although the Debtor believes that the Plan satisfies all requirement necessary for Confirmation, there can be no assurance that the Court will reach the same conclusion. Moreover, there can be no assurance that modifications of the Plan will not be required for Confirmation or that such modifications would not necessitate the re- solicitation of votes to accept the Plan as modified.

### 6.6    Feasibility of the Plan

The Debtor believes that the Plan is feasible because all creditors with Allowed Claims will be paid under fair and equitable terms.  Projections for the feasibility of the Plan are attached hereto as **Exhibit "1"** and incorporated herein by this reference.  The Monthly Operating Reports generated during the Chapter 11 are attached hereto as **Exhibit "2"** and incorporated herein by this reference.

### 6.7    Provisions Regarding Distributions and Objections to Claims

a.    **Time of Payment.** The first month in which payments will be made under this Plan will be the month in which the Effective Date falls, unless otherwise provided by the terms of this Plan. All payments required under this Plan shall be made on the Effective Date unless otherwise agreed to by the holder of such Claim and the Debtor or unless otherwise stated herein this Plan.

b.    **Delivery of Payment.** All payments or distributions required under this Plan shall be made to holder of the applicable Claim at: (i) the address set forth on the Proofs of Claim filed by such holders (or at the last known address of such holders if no Proof of Claim is filed or if the Debtor has been notified of a change of address); (ii) the address set forth in any written notices of address change delivered to the Debtor after the date of any related Proof of Claim; or (iii) if neither of the foregoing is applicable, at the addresses reflected in the Debtor's bankruptcy schedules, unless otherwise agreed to by the holder of such Claim and the Debtor.

c. **No Distribution Pending Allowance or Estimation of Claims.** No payments or distributions shall be made with respect to all or any portion of a Contested Claim unless and until such Claim becomes an Allowed Claim or Allowed Interest, as determined by Final Order. No holder of a Claim shall be entitled to any payment under the Plan if such holder has retained property of the Estate.

d. **Objections to Claims.** Any party authorized by the Bankruptcy Code may object to the allowance of prepetition Claims at any time prior to sixty (60) days after the Effective Date or, as to Claims based upon the Debtor's rejection pursuant to this Plan of an executory contract or unexpired lease, at any time prior to thirty (30) days after the filing of any such rejection Claim or rejection pursuant to this Plan. All Contested Claims shall be litigated to Final Order; provided, however, that the Reorganized Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court. Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

e. **Suspension of Payments on Disputed Claims.** If any Claim has been objected to within the time required, the Debtor shall segregate and set aside, from the funds on hand for distribution to the Claimant's Class, funds sufficient to satisfy the payment otherwise due on the Claim according to the provisions of the Plan. In the event that the claim objection is overruled or a dispute is resolved favorably to the party asserting the Claim, then the funds shall be paid to the Creditor in accordance with applicable Class provisions. In the event that the Disputed Claim is disallowed, the funds segregated in deference to the Claim shall be disbursed to other parties in interest, according to the applicable provisions of the Plan.

**6.8** **Executory Contracts**

a. **General Provisions.** "Assumption" of an executory contract or unexpired lease means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any. If you object to the assumption, and if applicable the assignment, of your unexpired lease or executory contract under the Plan, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to Confirmation, unless the Court has set an earlier time.

b. **General Rejection of Executory Contracts and Unexpired Leases.** Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under

section 6.08(b) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, or that were entered after the Petition Date, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

### 6.9  Default

No default in the performance of this Plan shall automatically result in the termination of the Plan or constitute a revocation of the Confirmation Order. If any party in interest believes that the Debtor is in default of any requirement of this Plan, such party shall provide written notice of such claimed default to the Debtor and its counsel prior to filing a motion with the Bankruptcy Court regarding the alleged noncompliance or otherwise seeking Bankruptcy Court enforcement of the terms of this Plan.

### ARTICLE VII.  RESERVATION OF CLAIMS

### 7.1  Reservation of Claims and Causes of Action

Any and all claims, causes of action, cross claims, or counterclaims held or assertable by the Debtor, including but not limited to: (i) any claim or cause of action under a policy of liability insurance or otherwise; (ii) the Avoidance Actions; and (iii) any and all claims, causes of action, counterclaims, demands, controversies, against third parties on account of costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, and executions of any nature, type, or description which the Debtor has or may come to have, including, but not limited to, negligence, gross negligence, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies (both civil and criminal), racketeering activities, securities and antitrust violations, tying arrangements, deceptive trade practices, breach or abuse of fiduciary duty, breach of any alleged special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, whether or not in connection with or related to this Plan, at law or in equity, in contract or in tort, or otherwise, known or unknown, suspected or unsuspected, are hereby preserved and retained for enforcement by the Debtor as of the Confirmation Date. It is the intent of the Debtor that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtor's Schedules and Statements. The Debtor has claims for unpaid accounts receivable.  The Debtor also has a claim for the failure of the Receiver to return all the tools and equipment that were seized prior to the filing of the case.

### 7.2  Return of Fraudulent Transfers

Any Creditor determined to have received a transfer that is voidable pursuant to sections 544, 547, 548, 549, and/or 550 of the Bankruptcy Code or any other applicable law shall be required to remit to the Debtor the determined amount of the avoided transfer prior to receiving any distribution under this Plan.

## ARTICLE VIII.  EFFECT OF CONFIRMATION, DISCHARGE, <u>RELEASES AND INJUNCTION</u>

**8.1**      <u>**Vesting of Property**</u>

On the Confirmation Date of the Plan, all property of the Estate shall vest in the Debtor pursuant to sections 1141(b) and (c) of the Bankruptcy Code, free and clear of all Claims and interests except as otherwise provided in this Plan. This Plan will evidence the release of any and all Liens or encumbrances against all property dealt with by the Plan, unless such Lien or encumbrance is specifically retained in the Plan.

**8.2**      <u>**Plan Creates New Obligations**</u>

Except as otherwise provided in the Plan, (1) the payment terms promised in the Plan constitute new contractual obligations that replace any payment terms that existed prior to the Effective Date, and (2) all rights and obligations other than those new payment terms continue to apply.

**8.3**      <u>**Legal Binding Effect**</u>

The provisions of this Plan shall: bind all holders of Claims and Interests, whether or not they accept this Plan.

**8.4**      <u>**Discharge**</u>

If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before Confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**8.5**      <u>**Satisfaction of Claims and Interests**</u>

Except as otherwise provided by the Plan, the consideration distributed under the Plan shall be in complete satisfaction of all Claims of any Creditor, including Claims arising prior to the Effective Date.

**8.6**      <u>**Temporary Injunction**</u>

Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation Order shall provide, among other things, that all Creditors and persons who have held, hold, or

may hold Claims or Interests against the Debtor, are enjoined on and after the Effective Date as long as the Plan is not in default and has not been completed against the: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtor or any third-party guarantor on account of Claims against the Debtor; (ii) enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or any third-party guarantor or any assets or property of same; or (iii) creation, perfection, or enforcement of any encumbrance of any kind against the Debtor or any third-party guarantor arising from a Claim. Such injunction expires at the end of the Plan term at which time all Allowed Claims will have been paid in accordance with the terms of the Plan.

### 8.7    <u>Modification of the Plan</u>

    **a.**    **Prior to Confirmation.** The Debtor may modify this Plan at any time prior to Confirmation, provided the modification complies with the requirements of sections 1122, 1123 and 1127 of the Bankruptcy Code. Upon the filing of any such modifications with the Bankruptcy Court, the Plan, as modified, becomes the Plan.

    **b.**    **After Confirmation.** The Debtor may modify the Plan at any time after Confirmation, upon compliance with Bankruptcy Code § 1127. The Debtor or its attorney shall provide notice of any such proposed modification to all Creditors and other parties in interest in these Chapter 11 proceedings. If, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interest of the Creditors, the Bankruptcy Court may modify the Plan without notice to Creditors, or may modify the Plan upon notice only to those Creditors that the Bankruptcy Court deems to be materially and adversely affected.

### 8.8    <u>Retention of Jurisdiction</u>

The Bankruptcy Court shall retain jurisdiction over this Bankruptcy Case after Confirmation of the Plan to the fullest extent provided for, or allowed, under the Bankruptcy Code and other applicable law. Specifically, but not by way of limitation, the Bankruptcy Court shall retain jurisdiction for the following purposes:

    **a.**    to consider and effect any modification of this Plan under Bankruptcy Code § 1127;

    **b.**    to hear and determine all controversies, suits and disputes that arise in connection with the interpretation, implementation, effectuation, consummation or enforcement of this Plan;

    **c.**    to hear and determine all requests for compensation and/or reimbursement of expenses for the period commencing on the Petition Date through the Confirmation Date;

    **d.**    to hear and determine all objections to Claims and Interests, and to determine the appropriate classification of any Claim or Interest, and other

controversies, suits and disputes that may be pending at or initiated after the Confirmation Date, except as provided in the Confirmation Order;

**e.** to hear and determine all causes of action;

**f.** to consider and act on such other matters consistent with this Plan as may be provided in the Confirmation Order;

**g.** to make such Orders as are necessary and appropriate to carry out and implement the provisions of this Plan; including to effect the further assurances provided in this Plan;

**h.** to approve the reasonableness of any payments made or to be made, within the meaning of Bankruptcy Code § 1129(a)(4);

**i.** to exercise the jurisdiction granted pursuant to sections 505(a) and (b) of the Bankruptcy Code to determine any and all federal, state, Commonwealth, local and foreign tax liabilities of, and any and all refunds of such taxes paid by the Debtor;

**j.** to hear and determine any issues or matters in connection with any property not timely claimed as provided in this Plan; and

**k.** to determine any and all motions, applications, adversary proceedings and Contested matters whether pending in the Case as of the Effective Date or brought subsequently by the Debtor.

Nothing contained herein shall be construed to limit the rights of the Debtor to commence or prosecute any claim in any court of competent jurisdiction.

## ARTICLE IX.  MISCELLANEOUS PROVISIONS

### 9.1    Request for Relief Under Bankruptcy Code § 1129(b)

In the event any Impaired Class of Claims or Interests shall fail to accept this Plan in accordance with Bankruptcy Code § 1129(a), the Debtor requests that the Bankruptcy Court confirm this Plan in accordance with the provisions of Bankruptcy Code § 1129(b), as modified by Section 1191.

### 9.2    Headings

All headings utilized in this Plan are for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

### 9.3    Due Authorization

Each and every Claimant who elects to participate in the distributions provided for herein warrants that such Claimant is authorized to accept, in consideration of such Claim against the

Debtor, the distributions provided for in this Plan and that there are not outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such Claimant under this Plan.

### 9.4    Further Assurances and Authorizations

The Debtor shall seek such orders, judgments, injunctions, and rulings that may be required to carry out further the intentions and purposes, and to give full effect to the provisions of, this Plan.

### 9.5    Applicable Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties, and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the internal laws of the State of Texas without reference to the laws of other jurisdictions.

### 9.6    No Interest

Except as expressly stated in this Plan, or allowed by the Bankruptcy Court, no interest, penalty, or late charge is to be Allowed on any Claim subsequent to the Petition Date.

### 9.7    Post-Confirmation Actions

After Confirmation, the Debtor may, with the approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interests of the Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and effect of the Plan.

### 9.8    Notices of Default

Notwithstanding anything contained herein to the contrary, no Claimant shall have the right to exercise any rights under the Plan unless and until the Debtor fails to cure any default within fourteen (14) days of receipt of written notice of such default to the Debtor and the undersigned counsel.

### 9.9    Notices

All notices, requests, elections, or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested. Notices provided to the Debtor under this Plan shall be sent to the Debtor at 8750 Scranton Street, Houston, TX 77041. A copy of all notices provided to the Debtor shall be

sent to: (i) the Debtor's attorney, Joyce W. Lindauer, 1412 Main Street. Suite 500 Dallas TX 75202 Tel: (972) 503-4033; Fax: (972) 503-4034; Email: joyce@joycelindauer.com.

### 9.10    **Payment Dates**

Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the next Business Day, except as may be provided in negotiable instruments requiring such payments.

### 9.11    **De Minimis Distribution**

No single distribution payment of less than $5.00 shall be required to be made to any holder of an Allowed Claim. Rather, any such de minimis distribution amount shall be held by the Debtor, added to the amount of the next distribution, and remitted to the holder of the Allowed Claim upon reaching a total greater than $5.00.

Dated: January 4, 2022.

Respectfully submitted,

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St. Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Debtor

*/s/ Robert Foran*
Authorized Representative of the Debtor

## CHAPTER 11 DEBTOR PROJECTIONS
## Preferred Ready-Mix LLC

| | | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| | Cash Receipts - Campbel Concrete | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 |
| | Cash Receipts - CEMTEX | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 |
| | Legal Retainer | 10,000.00 | | | | |
| | **NET INCOME** | 147,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 |
| **EXPENSES** | | | | | | |
| | Payroll | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 |
| | Rental | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 |
| | Fuel | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 |
| | Insurance & Maintenance | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 |
| | Internet | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| | Electric | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| | **TOTAL EXPENSES** | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 |
| **PLAN PAYMENTS** **Class** | | | | | | |
| 0 | Allowed Administrative Claims | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | |
| 1 | Allowed Secured Claims of BankDirect Capital Finance and Wayne C. Tyson | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 |
| 2 | Allowed Secured Claim of FundThrough USA Inc. | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 |
| 3 | Allowed General Unsecured Claims (excl. Insiders) | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 |
| 4 | Allowed Unscured Claims of Insiders | 0.00 | | | | |
| 5 | Allowed Equity Interest Holders | 0.00 | | | | |
| | **TOTAL PLAN PAYMENTS** | 13,742.10 | 13,742.10 | 13,742.10 | 13,742.10 | 8,742.10 |
| **NET INCOME** | | 28,977.90 | 18,977.90 | 18,977.90 | 18,977.90 | 23,977.90 |
| **CUMULATIVE INCOME** | | 28,977.90 | 47,955.80 | 66,933.70 | 85,911.60 | 109,889.50 |

# EXHIBIT "1"

| Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 | Month 13 | Month 14 | Month 15 |
|---|---|---|---|---|---|---|---|---|---|
| 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 |
| 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 |
| 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 |
| 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 |
| 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 |
| 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 |
| 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 |
| 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 |
| 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 |
| 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 |
| 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 |
| 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 |
| 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 |
| 133,867.40 | 157,845.30 | 181,823.20 | 205,801.10 | 229,779.00 | 253,756.90 | 277,734.80 | 301,712.70 | 325,690.60 | 349,668.50 |

| Month 16 | Month 17 | Month 18 | Month 19 | Month 20 | Month 21 | Month 22 | Month 23 | Month 24 | Month 25 |
|---|---|---|---|---|---|---|---|---|---|
| 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 |
| 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 |
| 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 |
| 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 |
| 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 |
| 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 |
| 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 |
| 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 |
| 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 |
| 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 |
| 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 |
| 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 |
| 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 |
| 373,646.40 | 397,624.30 | 421,602.20 | 445,580.10 | 469,558.00 | 493,535.90 | 517,513.80 | 541,491.70 | 565,469.60 | 589,447.50 |

| Month 26 | Month 27 | Month 28 | Month 29 | Month 30 | Month 31 | Month 32 | Month 33 | Month 34 | Month 35 |
|---|---|---|---|---|---|---|---|---|---|
| 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 |
| 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 |
| 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 |
| 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 |
| 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 |
| 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 |
| 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 |
| 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 |
| 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 |
| 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 |
| 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 |
| 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 |
| 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 |
| 613,425.40 | 637,403.30 | 661,381.20 | 685,359.10 | 709,337.00 | 733,314.90 | 757,292.80 | 781,270.70 | 805,248.60 | 829,226.50 |

| Month 36 | Month 37 | Month 38 | Month 39 | Month 40 | Month 41 | Month 42 | Month 43 | Month 44 | Month 45 |
|---|---|---|---|---|---|---|---|---|---|
| 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 |
| 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 |
| 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 |
| 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 |
| 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 |
| 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 |
| 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 |
| 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 |
| 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 |
| 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 |
| 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 |
| 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 |
| 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 |
| 853,204.40 | 877,182.30 | 901,160.20 | 925,138.10 | 949,116.00 | 973,093.90 | 997,071.80 | 1,021,049.70 | 1,045,027.60 | 1,069,005.50 |

| Month 46 | Month 47 | Month 48 | Month 49 | Month 50 | Month 51 | Month 52 | Month 53 | Month 54 | Month 55 |
|---|---|---|---|---|---|---|---|---|---|
| 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 |
| 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 |
| 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 |
| 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 |
| 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 |
| 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 |
| 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 |
| 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 |
| 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 |
| 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 |
| 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 |
| 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 |
| 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 |
| 1,092,983.40 | 1,116,961.30 | 1,140,939.20 | 1,164,917.10 | 1,188,895.00 | 1,212,872.90 | 1,236,850.80 | 1,260,828.70 | 1,284,806.60 | 1,308,784.50 |

| Month 56 | Month 57 | Month 58 | Month 59 | Month 60 |
|---|---|---|---|---|
| 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 | 135,000.00 |
| 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 | 2,070.00 |
| 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 | 137,070.00 |
| 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 |
| 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 | 1,550.00 |
| 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 |
| 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 |
| 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 | 104,350.00 |
| 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 | 1,072.95 |
| 169.15 | 169.15 | 169.15 | 169.15 | 169.15 |
| 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 |
| 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 | 8,742.10 |
| 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 | 23,977.90 |
| 1,332,762.40 | 1,356,740.30 | 1,380,718.20 | 1,404,696.10 | 1,428,674.00 |