United States Bankruptcy Court
Southern District of Texas
**ENTERED**
February 24, 2022
Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PREFERRED READY-MIX LLC, | § | CASE NO. 21-33369 |
| | § | |
| Debtor. | § | Chapter 11 |

### ORDER CONFIRMING DEBTOR'S FIRST AMENDED PLAN
### OF REORGANIZATION UNDER SUBCHAPTER V OF CHAPTER 11

CAME ON FOR CONSIDERATION by the Court at the confirmation hearing held on February 22, 2022, the Debtor's First Amended Plan of Reorganization Under Subchapter V of Chapter 11 [Docket No. 102] ("Plan') filed by Preferred Ready-Mix LLC, Debtor in the above-styled and numbered case. The Plan having been transmitted to all creditors, equity interest holders and parties-in-interest and the Court, after hearing the evidence presented, concludes as follows:

1.      The service of the Subchapter V Trustee shall terminate upon substantial consummation of the Plan. The Debtor shall file a Notice of Substantial Consummation.

2.      Compliance with 11 U.S.C. § 1129(a)(1). The Court finds and concludes that the Plan complies with the applicable provisions of the Bankruptcy Code, as required by 11 U.S.C. §§ 1191(a), 1129(a)(1). Additionally, as required by Bankruptcy Rule 3016(a), the Plan is dated, and the Plan identifies the Debtor as the proponent.

3.      Compliance with 11 U.S.C. § 1129(a)(2). The Court finds and concludes that the Debtor has complied with the applicable provisions of the Bankruptcy Code, as required by 11 U.S.C. § 1129(a)(2). The Debtor has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and this Court's Order in transmitting the Plan,

Disclosure Statement, the ballots, and all related documents and notices in the solicitation and tabulation of acceptances or rejections of the Plan.

4.     <u>Compliance with 11 U.S.C. §1129(a)(3).</u>   The Court finds and concludes that the Debtor has proposed the Plan in good faith and not by any means forbidden by law, as required by 11 U.S.C. § 1129(a)(3). The Debtor has acted and is presently acting in good faith in conjunction with all aspects of the Plan. All provisions and transactions contemplated by the Plan were negotiated and consummated in good faith, at arm's length, and without collusion. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the formulation of the Plan and the solicitation of the Plan.   The Debtor filed the proposed Plan with legitimate and honest purposes of paying all allowed claims in full.   Additionally, the Plan reflects the best interest of the Debtor's Estate.   In addition, the Court finds and concludes that the Debtor solicited acceptance of the Plan in good faith, and in compliance with the Bankruptcy Code.

5.     <u>Compliance with 11 U.S.C. § 1129(a)(4).</u> The Court finds and concludes that all payments made or to be made by the Debtor for services or for costs and expenses in or in the Debtor's Case, or in connection with the Plan and incident to the Debtor's Case have been approved by, or are subject to approval of, this Court, as required by 11 U.S.C. § 1129(a)(4).

6.     <u>Compliance with 11 U.S.C. § 1129(a)(5).</u>   The Court finds and concludes that the Debtor has complied with the provisions of 11 U.S.C. § 1129(a)(5).

7.     <u>Compliance with 11 U.S.C. § 1129(a)(6).</u> The Court finds and concludes that, after confirmation of the Plan, the plan does not purport to alter any rate regulation by any governmental entity, thus satisfying 11 U.S.C. §1129(a)(6).

8.      <u>Compliance with 11 U.S.C. § 1129(a)(7)</u>. The Court finds and concludes that with respect to impaired classes of Claims or Interests   each holder of a Claim or Interest has either: (i) accepted the Plan or (ii) will receive under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code, as required by 11 U.S.C. § 1129(a)(7).

9.      <u>Compliance with 11 U.S.C. § 1129(a)(8)</u>. The Court finds and concludes that the requirements of this section are met and Classes 1A, 1B and 2 have accepted the Plan pursuant to 11 U.S.C. § 1126(c).

10.      <u>Compliance with 11 U.S.C. §1129(a)(9)</u>. The Court finds and concludes that the treatment of Claims of a kind specified in 11 U.S.C. § 507(a)(3) satisfies the requirements set forth in 11 U.S.C. § 1129(a)(9).

11.      <u>Compliance with 11 U.S.C. § 1129(a)(10)</u>. The Court finds and concludes that at least one class of Claim or Interests that is impaired under the Plan has voted to accept the Plan, excluding any acceptances by any insider, thus satisfying 11 U.S.C. § 1129(a)(10).

12.      The Plan is not likely to be followed by further need for reorganization.

13.      The Plan does not affect any retiree benefits.

14.      Except as provided in the Plan, the Debtor reserves the right to object to the amount and allowance of all claims after Confirmation.   All such objections shall be filed within sixty (60) days of the Effective Date, as defined in the Plan.

**IT IS THEREFORE ORDERED THAT:**

A.      The Plan found at Docket No. 102 and attached hereto is confirmed pursuant to 11 U.S.C. § 1191(a) of the Bankruptcy Code.   The terms of this Confirmation Order are

controlling if any inconsistency exists between this Confirmation Order and the Plan.   The failure to specifically include or to refer to any particular article, section, or provision of the Plan or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision.   The Plan and any related documents are confirmed in their entirety. The Court incorporates the findings of fact set forth above as the Orders of this Court as appropriate.

B.      The Plan is confirmed pursuant to 11 U.S.C. § 1191 as a consensual Plan and the Debtor will act as the disbursing agent to make all payments to creditors pursuant to the terms of the Plan.

C.      Upon substantial consummation of the Plan, the duties of the Trustee in the Debtor's bankruptcy case shall terminate as provided under 11 U.S.C. § 1183(c)(1).

D.      No later than 14 days after the Plan is substantially consummated, the Debtor shall file with the Court and serve upon the Trustee, U.S. Trustee, and all parties in interest, notice of substantial consummation of the Plan as provided under 11 U.S.C. § 1183(c)(2).

E.      On the Effective Date of the Plan, the Debtor shall be and is hereby discharged to the extent and as provided by 11 U.S.C. § 1141(d)(1).

F.      On the Effective Date of the Plan, property of the bankruptcy estate of the Debtor shall vest in the Debtor under 11 U.S.C. § 1141(b).

G.      The terms of the Plan and this Confirmation Order will be binding upon the Debtor, all creditors, and all equity security holders, whether or not such creditors and equity holders are impaired under the Plan or have accepted the Plan, as provided by 11 U.S.C. § 1141(a).

H.      Within 3 days after the Effective Date of the Plan, counsel for the Debtor shall serve notice of (i) entry of this Confirmation Order; (ii) the occurrence of the Effective Date; and (iii) any

bar dates and any other deadlines set by the Plan ("Notice"), pursuant to Bankruptcy Rule 3020(c). The Notice shall be sent to all creditors and parties-in-interest by first class mail, postage prepaid. Counsel for the Debtor shall thereafter promptly file a copy of such Notice with proof of mailing with the Court.

       I.     The Debtor and its respective agents and attorneys are hereby authorized, empowered, and directed to carry out the provisions of the Plan and to perform all acts and execute and deliver such documents as are necessary or appropriate under the Plan and this Confirmation Order.

       J.     Nothing in the Plan shall release or diminish the claims the Debtor holds against its former counsel, Jessica Hoff and her firm.

       SIGNED:

Signed: February 24, 2022

Jeffrey P. Norman
United States Bankruptcy Judge

Submitted by:
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Attorneys for Debtor

Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Debtor

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **PREFERRED READY MIX, LLC,** | § | **CASE NO. 21-33369-11** |
| | § | **Chapter 11** |
| **Debtor.** | § | |

## DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION
## UNDER SUBCHAPTER V OF CHAPTER 11

Dated: February 18, 2022

## <u>TABLE OF CONTENTS</u>

Article I.      INTRODUCTION ................................................................................................4

Article II.     DEFINITIONS ..................................................................................................4

Article III.    VOTING ON THE PLAN AND OBJECTIONS ................................................7

Article IV.     BACKGROUND ...............................................................................................8
   4.1    Background of the Debtor and Events Leading to Bankruptcy ........................8
   4.2    Significant Events Since the Petition Date.....................................................9
   4.3    Assets of the Debtor .....................................................................................10
   4.4    Liabilities of the Debtor ...............................................................................10
   4.5    Tax Consequences of the Plan .....................................................................11

Article V.      LIQUIDATION ANALYSIS ...........................................................................12

Article VI.     PLAN OF REORGANIZATION.....................................................................13
   6.1    Classification of Claims and Interests..........................................................13
   6.2    Claims and Interests Impaired Under the Plan .............................................13
   6.3    Treatment of Unclassified Claims, Administrative Expense Claims, Priority
       Claims, and U.S. Trustee Fees .....................................................................13
   6.4    Treatment of Classified Claims and Interests Under the Plan .......................14
   6.5    Implementation of the Plan ..........................................................................16
   6.6    Feasibility of the Plan ..................................................................................19
   6.7    Provisions Regarding Distributions and Objections to Claims......................20
   6.8    Executory Contracts .....................................................................................21
   6.9    Default .........................................................................................................21

Article VII.    RESERVATION OF CLAIMS .........................................................................21
   7.1    Reservation of Claims and Causes of Action................................................21
   7.2    Return of Fraudulent Transfers ....................................................................22

Article VIII.   EFFECT OF CONFIRMATION, DISCHARGE, RELEASES
       AND INJUNCTION .......................................................................................22
   8.1    Vesting of Property ......................................................................................22
   8.2    Plan Creates New Obligations......................................................................22
   8.3    Legal Binding Effect ....................................................................................22
   8.4    Discharge .....................................................................................................23
   8.5    Satisfaction of Claims and Interests.............................................................23
   8.6    Temporary Injunction...................................................................................23
   8.7    Modification of the Plan...............................................................................23
   8.8    Retention of Jurisdiction ..............................................................................24

Article IX.     MISCELLANEOUS PROVISIONS ................................................................25
   9.1    Request for Relief Under Bankruptcy Code § 1129(b)..................................25
   9.2    Headings.......................................................................................................25

9.3     Due Authorization ............................................................................................25
9.4     Further Assurances and Authorizations ...........................................................25
9.5     Applicable Law .................................................................................................25
9.6     No Interest ........................................................................................................25
9.7     Post-Confirmation Actions ...............................................................................26
9.8     Notices of Default ............................................................................................26
9.9     Notices ..............................................................................................................26
9.10    Payment Dates ..................................................................................................26
9.11    De Minimis Distribution ..................................................................................26
9.12    Reports ..............................................................................................................26
9.13    Discharge ..........................................................................................................26
9.14    Remedies ...........................................................................................................27
9.15    Distributions to Creditors by Subchapter V Trustee ........................................27
9.16    Subchapter V Trustee Disbursement Reports ..................................................27
9.17    Subchapter V Requirements .............................................................................27

EXHIBITS:
        Exhibit 1 – Projections
        Exhibit 2 – Monthly Operating Reports

# ARTICLE I.  INTRODUCTION

This Plan is proposed by Preferred Ready Mix, LLC (the "Debtor"). On October 14, 2021, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. The Debtor amended its petition to one under Subchapter V of title 11 on November 24, 2021.  This *Debtor's Plan of Reorganization Under Subchapter V of Chapter 11* is provided pursuant to Bankruptcy Code to all the Debtor's known creditors and other parties in interest. Under the Plan the Debtor will pay Allowed Secured Claims in full over 60 months and will pay 50% of Allowed Unsecured Claims over 60 months. The details of the Plan are set out in Article VI of this document. Events since the filing of the case are also described in this Plan.

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)**

# ARTICLE II.  DEFINITIONS

Except as expressly provided herein or unless the context otherwise requires, the terms set forth in this Article II shall have the following meanings when used in initially capitalized form in this Plan. Any term used in initially capitalized form that is not defined herein, but that is defined in the Bankruptcy Code, shall have the meaning assigned to such term in the Bankruptcy Code. Such meanings shall be equally applicable to both the singular and plural forms of such terms.

2.1 "**Administrative Expense Claim**" means an administrative expense or claim described in Bankruptcy Code § 503 and entitled to administrative priority pursuant to Bankruptcy Code § 507(a)(1), including, but not limited to, Fee Claims.

2.2 "**Allowed Amount**" means the amount of any Allowed Claim.

2.3 "**Allowed Claim**" means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that: (i) a Proof of Claim or request for payment was timely filed, or, with leave of the Bankruptcy Court, late filed, and as to which no objection has been timely filed with the Bankruptcy Court, or, if filed, is allowed by a Final Order, unless otherwise provided in this Plan; (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and no objection has been timely filed or, if filed, is allowed by a Final Order; or (iii) with respect to an Administrative Expense Claim or Fee Claim, the Administrative Expense Claim or Fee Claim has been approved by a Final Order upon notice and application to the Bankruptcy Court.

2.4 "**Assets**" means property of the Estate.

2.5 "**Avoidance Actions**" means any and all rights, claims, and causes of action which a trustee, Debtor, or other appropriate party in interest would be able to assert on behalf of the Estate under applicable state statutes or the avoidance provisions of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code §§ 506, 542-551, and 553.

**2.6** "**Bankruptcy Case**" or "**Case**" means this bankruptcy case: Case No. 21-33369-11 styled as Preferred Ready-Mix, LLC, pending before the Bankruptcy Court.

**2.7** "**Bankruptcy Code**" or "**Code**" means the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

**2.8** "**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, or other such court that may have jurisdiction with respect to the reorganization of the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

**2.9** "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended, and "**Bankruptcy Rule**" refers to a specific rule therein.

**2.10** "**Bar Date**" means February 14, 2022, the deadline established by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(3), after which any Proof of Claim may not be timely filed, except Claims held by governmental agencies.

**2.11** "**Business Day**" shall mean any day that is not a Saturday, Sunday, or one of the legal holidays listed in Bankruptcy Rule 9006(a).

**2.12** "**Claim**" shall have the meaning set forth in Bankruptcy Code § 101(5).

**2.13** "**Claimant**" or "**Creditor**" means the holder of a Claim or interest in the Assets.

**2.14** "**Class**" means any class into which Claims are classified pursuant to Section 6.01 of the Plan. Each subclass of a class shall be treated as a separate class.

**2.15** "**Confirmation**" means the Bankruptcy Court's entry of the Confirmation Order.

**2.16** "**Confirmation Date**" means the date on which the Order confirming this Plan is entered.

**2.17** "**Confirmation Hearing**" means the hearing or hearings held before the Bankruptcy Court in which the Debtor will seek Confirmation of this Plan.

**2.18** "**Confirmation Order**" means the Order confirming this Plan.

**2.19** "**Contested**" when used with respect to a Claim, means a Claim against the Debtor: (i) that is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated; (ii) that is listed in the Debtor's Schedules of Assets and Liabilities as undisputed, liquidated, and not contingent and as to which a Proof of Claim has been filed with the Bankruptcy Court, to the extent the Proof of Claim amount exceeds the scheduled amount; (iii) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (iv) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

**2.20** **Debtor**" means Preferred Ready-Mix, LLC, the Debtor herein. Where the context so requires, "**Debtor**" shall also include the Reorganized Debtor.

**2.21** "**Disputed**" with respect to a Claim means either: (i) a Claim which has been objected to by the Debtor; or (ii) a Claim that is listed on the Debtor's bankruptcy schedules as "disputed, contingent or unliquidated" and for which such Creditor or Interest holder has not filed a Proof of Claim.

**2.22** "**Effective Date**" means the thirtieth (30th) day after the Confirmation Date.

**2.23** "**Estate**" means the bankruptcy estate of the Debtor in this Case.

**2.24** "**Fee Claim**" means a Claim under Bankruptcy Code §§ 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in this Bankruptcy Case.

**2.25** "**Fee Application**" means an application filed with the Bankruptcy Court for allowance of a Fee Claim.

**2.26** "**Final Order**" means an Order as to which any appeal that has been taken has not been stayed following the expiration of the time for appeal or has been resolved, or as to which the time for appeal has expired.

**2.27** "**Impaired**" means the treatment of an Allowed Claim or Interest pursuant to the Plan unless, with respect to such Claim or Interest, either: (i) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after occurrence of a default, the Debtor (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in § 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim or Interest as such maturity existed before such default; (C) compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; or (iii) the Plan provides that on the Effective Date, the holder of such Claim or Interest receives, on account of such Claim or Interest, cash equal to the Allowed Amount of such Claim or Interest.

**2.28** "**Insider**" has the meaning provided by § 101(31) of the Bankruptcy Code.

**2.29** "**Interest**" means any equity or ownership interest in the Debtor.

**2.30** "**Lien**" means any charge against or interest in property to secure payment of debt or performance of an obligation and includes a judicial lien, security interest, and deed of trust, mortgage and property tax lien.

**2.31** "**Order**" means an Order of the Bankruptcy Court.

**2.32** "**Petition Date**" means October 14, 2021, the date on which the Debtor filed its voluntary petition under Subchapter V of Chapter 11 of the Bankruptcy Code.

**2.33** "**Plan**" means this *Plan of Reorganization Under Subchapter V of Chapter 11*, including any amendments, modifications or corrections made thereto pursuant to the Bankruptcy Code.

**2.34** "**Priority Tax Claim**" means a Claim entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

**2.35** "**Proof of Claim**" means a written statement setting forth a Creditor's Claim filed in this Case and conforming substantially to the appropriate official form.

**2.36** "**Schedules and Statements**" means and refers to the Debtor's bankruptcy schedules A/B, D-H and Statement of Financial Affairs filed by the Debtor, and any amendments thereto.

**2.37** "**Secured Claim**" means a Claim that is secured within the meaning of Bankruptcy Code § 506(a). Should the value of the collateral securing a Secured Claim be less than the amount of the Claim, the Claim will be bifurcated into a Secured Claim equal to the value of the collateral and an Unsecured Claim for the remainder.

**2.38** "**Unsecured Claim**" means any Claim that is not a Secured Claim or an Administrative Expense Claim and that is not entitled to priority treatment under Bankruptcy Code § 507.

## ARTICLE III.  VOTING ON THE PLAN AND OBJECTIONS

### 3.1   Who May Vote

You are entitled to vote on the Plan unless:

    (1)    your Claim or Interest is Disputed (as defined herein);

    (2)    your Class receives no distribution (presumed to reject the Plan);

    (3)    your Class is "unimpaired" (presumed to accept the Plan – *See* Sections 6.01 and 6.02 to see if your Class is Impaired or unimpaired); or

    (4)    your Claim is unclassified (and thus required by law to be paid in full).

If your Claim or Interest is Disputed, then you must file a motion and have it allowed for voting purposes (you must do that soon so that your motion can be heard before votes are counted. *See* Bankruptcy Rule 3018(a)).

### 3.2    <u>How to Vote</u>

Fill out and return the attached ballot (if you are entitled to vote) **by the deadline** and according to the other instructions in the enclosed order regarding voting and procedures.

### 3.3    <u>Effect of Vote</u>

After a plan of reorganization has been filed, it must either be accepted by holders of claims against, or interests in, the debtor, or be found by the Court not to discriminate unfairly and that it is fair and equitable with respect to each class of claims or interests that is impaired under the plan or that has not accepted the plan.

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. A Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court. The Court may deem classes that do not vote as accepting the Plan.

### 3.4    <u>Who May Object</u>

Even if you are not entitled to vote, you may object to Confirmation of the Plan if you believe that the requirements for Confirmation are not met (and if you are a party in interest in this bankruptcy case). For the deadlines and procedures to object, see the enclosed order.

## <u>ARTICLE IV. BACKGROUND</u>

### 4.1    <u>Background of the Debtor and Events Leading to Bankruptcy</u>

The Debtor is in the business of providing concrete delivery services for commercial and residential concrete providers. The Debtor filed this Bankruptcy Case due to a receivership which had resulted in the seizure of the Debtor's equipment and trucks and put the Debtor out of business. The receivership relates to a judgment taken against the Debtor which the Debtor is still disputing.

The Debtor's business was formed on March 19, 2019 as an LLC with 3 members: Robert Foran, Lincoln Catchings, III, and Matthew Tyson, each having a 1/3 ownership interest. Each member agreed to make capital contributions to the business. Matthew Tyson, however, did not perform his obligations to the business and his ownership interest was withdrawn on March 18, 2021. Matthew Tyson was removed based on allegations against him of fraud, conspiracy to commit fraud, embezzlement, theft, and diversion of funds exceeding $50,000.00. In lieu of criminal charges, the parties opted for removal of Matthew Tyson from the business. The remaining members, Robert Foran and Lincoln Catchings, III, each currently own a 50% ownership in the business. There is some dispute over the ownership raised by the Receiver but no proof has been provided indicating anything different than what is described herein.

On September 30, 2019 Cameron Roesle initiated a lawsuit against Robert Foran and a company under the name of Nolan Star Trucking, LLC, Cause No. 19-DCV-267154; Cameron Roesle v. Robert Foran and Nolan Star Tucking, LLC; 400th Judicial District Court of Fort Bend County, Texas.  A Default Judgment was entered on December 12, 2019. On June 24, 2020 Robert Berleth was appointed as Receiver. Robert Foran subsequently filed a Bill of Review on September 3, 2021 alleging he was never served with the Petition and Citation. Cameron Roesle filed an answer to the Bill of Review and Motion for Summary Judgment on September 27, 2021, and the summary judgment hearing was pending when the Bankruptcy Petition was filed.

On September 30, 2021, Robert Berleth filed an Emergency Ex Parte Application for Order Supplementing Order Appointing Receiver. Robert Berleth entered testimony from Matthew Tyson stating the Robert Foran was the **sole owner of Preferred Ready-Mix LLC**. Upon information and belief Robert Berleth relied on the testimony of Matthew Tyson to obtain a court order and then seized at least eight (8) trucks in addition to the truck titles, supplies, equipment, electronics, tools, fuel cards, credit/debit cards, payment tickets, and other office items. Upon information and belief Robert Berleth may have given titles to Mathew Tyson.  This matter is still being investigated.

The loss of the items taken by Robert Berleth caused the business to become inoperable. The trucks were the sole source of revenue for the business. Robert Berleth had a receivership over Robert Foran personally and not over Preferred Ready-Mix. When Robert Berleth was on the business property to seize the assets, Robert Berleth was informed that a prior receivership existed over Robert Foran personally in Tarrant County by Bill Hammer. Bill Hammer called Robert Berleth to inform him that seizure of the assets was not allowed in this case. Robert Berleth indicated that he was going to continue his seizure regardless of the prior court order. Prior to the bankruptcy filing Robert Berleth refused to return the assets of the business and left the Debtor with no other options other than filing for bankruptcy on October 14, 2021. Debtor contends it still has claims for failure to return all the personal property that was seized by Berleth.

Further, the downturn in business caused by the COVID-19 pandemic also impacted the Debtor's operations.  The Debtor has a large amount of uncollectible accounts receivable due from customers ($622,241.26 – see Schedule AB), which further damaged Debtor's ability to stay current on amounts due to its creditors.  The collectability of the Receivables is questionable.

### 4.2    <u>Significant Events Since the Petition Date</u>

    **a.**    On October 14, 2021, the Debtor filed a voluntary petition in the Bankruptcy Court thereby commencing this Case.

    **b.**    On November 19, 2021, the Debtor amended its petition to designate the case as a SUB V case.

    **c.**    On November 29, 2021, Allison Byman was appointed as the Sub-Chapter V trustee herein (the "Trustee").

d.    On November 24, 2021 the Court entered an order finding that with lender consent the request for use of cash collateral was moot.

e.    On December 14, 2021, the Court entered an *Order Granting Application by Debtor to Employ Counsel*, approving the employment of Joyce W. Lindauer Attorney, PLLC as the general bankruptcy counsel for the Debtor.

f.    There were pending the following matters before the Court as of the date of the filing of the Plan: Motion to (1) Examine Debtor's Transactions with Attorney; (2) Cancel Debtor's Agreement with Attorney; (3) Disallow and Order Disgorgement of Excessive Fees; and (4) Impose Sanctions Against Attorney set for January 12, 2021 at 11:00 AM; and Status Conference set for January 12, 2021 at 11:00 AM.  Both of these hearings have now taken place and Jessica Hoff was ordered to pay monies back to the Debtor. To date no funds have been returned to the Debtor.  The Debtor intends to pursue such claims to collection.

g.    The Debtor has filed its Sub V Status Report.

h.    This Plan is timely filed.

### 4.3    Assets of the Debtor

The Debtor owned personal property as of the Petition Date with the approximate fair market value of $591,407.62. This consists of (i) cash, cash equivalents and financial assets in the amount of $1,307.62; (ii) deposits and pre-payments in the amount of $3,100.00, (iii) collectible accounts receivable in the amount of $6,000.00 (most of the receivables the Debtor has determined are not collectible); (iv) office furniture and furnishings of $11,000.00; (v) machinery, equipment and vehicles in the approximate amount of $490,000.00; and (vi) a shipping storage container and tools in the amount of $80,000.00. This is the Debtor's opinion of the value of its assets. There has been no formal appraisal done of these assets.  The Debtor also had tools that were seized by the Receiver and are still missing and have not been returned. The Debtor intends to pursue this issue after Confirmation as it is not resolved.

### 4.4    Liabilities of the Debtor

According to Debtor's Schedules and the Proof of Claims filed in this Case, the Debtor's liabilities (excluding Administrative Expense Claims) total $968,195.97 as of the Petition Date. The Debtor's liabilities, both Disputed and Undisputed, are summarized as follows:

a.    **Administrative Expense Claims.**  The Estate will be liable for certain Administrative Expense Claims pursuant to Bankruptcy Code §503(b) through the Confirmation Date, including Fee Claims of Joyce W. Lindauer Attorney, PLLC as the Debtor's bankruptcy counsel, the Sub V Trustee, and some amount, if any, to Robert Berleth (if Allowed after objection). Before the Debtor pays any Fee Claims, the Bankruptcy Court will have determined that such Claim should be Allowed and the reasonableness of such fees and expenses.

    b.      **Priority Tax Claims.**  There are no Priority Tax Claims filed.

    c.      **Secured Claims.** Total Secured Claims, based on the Debtor's Schedules and the Proofs of Claim on file, are estimated to be $84,014.35.  The Debtor reserves the right to object to any of the Secured Claims.

    d.      **General Unsecured Claims.**  According to the Proofs of Claim and the Debtor's Schedules, the Debtor owes total Unsecured Claims of approximately $902,376.29. The Debtor reserves the right to object to any of the Unsecured Claims.

    e.      **Priority Wage Claims.**  One priority wage claim has been filed in this case. The Debtor intends to object to this claim.  The Claim as filed is in the amount of $3,172.68.

### 4.5    <u>Tax Consequences of the Plan</u>

    a.      **Disclaimer.** The Debtor does not purport to provide tax advice to the holders of Claims. The following is intended only as a summary of possible federal income tax consequences of the Plan and is not a substitute for careful tax planning with a tax professional. The following is for information purposes only and is NOT tax advice. The tax consequences are in many cases uncertain and may vary depending on a holder's individual circumstances. Accordingly, holders of Claims are urged to consult with their tax advisors about the federal, state, local, and foreign tax consequences of the Plan on their tax returns and tax liabilities.

    b.      **Tax Consequences.** Implementation of the Plan may result in federal income tax consequences to holders of Claims or Interests and the Debtor. Tax consequences to a particular Claim or Interest holder may depend on the particular circumstances or facts regarding the Claim or Interest. IRS Publication 908, entitled "Bankruptcy Tax Guide" provides valuable information regarding the federal income tax aspects of bankruptcy. The "Bankruptcy Tax Guide" is available directly from the IRS online at http://www.irs.gov/pub/irs-pdf/p908.pdf.

    c.      **Cancellation of Debt.** Cancellation of the Debtor's debt ("**COD**") is generally considered as taxable income of the Debtor. COD is the amount by which the indebtedness discharged exceeds any consideration given in exchange. However, there are exceptions which prevent COD from being treated as taxable income. To the extent the Debtor is insolvent or the Debtor is discharged in a bankruptcy proceeding, as is the case at bar, the Internal Revenue Code excludes COD from income. The statutory exclusion for COD from the Debtor's gross income in a Chapter 11 bankruptcy case arises where a discharge is granted by the Court as is requested in the Plan.

    **d.**    **Holders of Allowed Claims.** The tax consequences associated with distributions under the Plan to the holders of an Allowed Claim will depend on, among other things: (i) the consideration received or deemed to have been received by the holder of any such Claim; (ii) whether the Allowed Claim holder reports income on an accrual or cash basis; (iii) the taxable year in which any distributions under the Plan are received by the Allowed Claim holder; (iv) whether the Claim was Allowed or Contested/Disputed as of the Effective Date; and (v) whether such Allowed Claim holder had previously written the obligation off as bad debt. ALLOWED CLAIM HOLDERS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN.

## ARTICLE V.  FORCED OR CHAPTER 7 LIQUIDATION ANALYSIS

Section 1129(a)(7) of the Bankruptcy Code requires that a Chapter 11 plan of reorganization must provide at least as much value to each Impaired Creditor as could be realized in a liquidation under Chapter 7 of the Bankruptcy Code.

In determining whether the requirements of Section 1129(a)(7) of the Bankruptcy Code have been met, the first step is to determine the dollar amount that would be generated from a hypothetical liquidation of the Debtor's assets in Chapter 7. Such amounts must then be reduced by the costs and expenses of the liquidation. Further reductions would be required to eliminate cash and asset liquidation proceeds that would be applied to Secured Claims and amounts necessary to satisfy priority Claims that are senior to general Unsecured Claims (including Administrative Expense Claims that may result from the termination of the Debtor's business and the liquidation of its assets).

The Debtor's assets consist primarily of cash on hand, accounts receivable and machinery, vehicles and equipment. Based on the Debtor's opinion, these assets had a fair market value of approximately $591,407.62 on the Petition Date. In a forced liquidation under Chapter 7 the non-cash assets, upon information and belief, would be worth about 50% less because such a liquidation would increase the costs of administration of the estate, and the COVID-19 virus would result in a reduced auction sale value because the ability to conduct an actual auction sale is significantly reduced. These are only the Debtor's opinions.

Application of this asset value to the payment of Secured Claims would leave $211,689.46 funds available for Unsecured Claims.  Thus, in Chapter 7 it is likely that Unsecured Creditors would receive $211,689.46.  The Plan provides a greater return to the Unsecured Creditors than they would receive in a Chapter 7 case.

**This Plan proposes to pay one hundred percent (100%) of all Allowed Priority Tax Claims, all Allowed Priority Claims, all Allowed Secured Claims and 50% of Allowed Unsecured Claims against the Debtor.**

**This Plan does not contemplate a liquidation of the assets.  The Plan does contemplate the collection of receivables to pay to the Unsecured Creditors as discussed herein.**

## ARTICLE VI.  PLAN OF REORGANIZATION

### 6.1     Classification of Claims and Interests

Claims against the Debtor, excluding Administrative Expense Claims and Priority Tax Claims, are divided into the following Classes:

**Class 1 Claim:** Allowed Secured Claim of BankDirect Capital Finance

**Class 1A Claim:** Allowed Secured Claims of Ag Barn.

**Class 1B Claim:** Allowed Secured Claim of Wayne C. Tyson**.**

**Class 2 Claim:**  Allowed Secured Claim of FundThrough USA, Inc.

**Class 3 Claim:** Allowed General Unsecured Claims, excluding Insiders.

**Class 4 Claim:** Allowed Unsecured Claims of Insiders.

**Class 5 Interests:** Allowed Equity Interest Holders.

### 6.2     Claims and Interests Impaired Under the Plan

Claims in Classes 1, 1A, 1B, 2 and 3 are Impaired and entitled to vote on this Plan. Class 4 Insider Claims are Impaired and  entitled to vote but as Insiders their claims do not count towards Confirmation of the Plan.  Class 5 Interests are not Impaired.

### 6.3     Treatment of Unclassified Claims, Administrative Expense Claims, Priority Tax Claims, and U.S. Trustee Fees

**a.**     **Unclassified Claims.** All Allowed Claims (except Administrative Expense Claims and Priority Tax Claims) are placed in Classes for all purposes, including voting on, confirmation of, and distributions under this Plan. In accordance with Bankruptcy Code § 1123(a)(1), Administrative Expense Claims and Allowed Priority Tax Claims have not been classified.

**b.**     **Administrative Expense Claims.** Each holder of an Administrative Expense Claim under Bankruptcy Code § 503 shall receive either: (i) with respect to Administrative Expense Claims which are Allowed Claims on the Effective Date, the amount of such holder's Allowed Claim in one cash payment, within ten (10) days after the Effective Date, from the Debtor; (ii) with respect to Administrative Expense Claims which become Allowed Claims after the Effective Date, the amount of such holder's Allowed Claim, in one cash payment from the Debtor within ten (10) days after such Claim becomes an Allowed Administrative Expense Claim; or (iii) such other treatment agreed upon by the Debtor and such holder. The Plan shall provide for the submission of all or such portion of the future income of the Debtor as required to make the payments called for by the Plan to the

supervision and control of the Subchapter V Trustee as is necessary for the execution of the Plan in the event the Plan is not determined to be consensual.

1.      <u>Fee Claims.</u> Each professional person whose retention with respect to this Case has been approved by the Bankruptcy Court or who holds, or asserts, an Administrative Expense Claim that is a Fee Claim shall be required to file with the Bankruptcy Court a final fee application within sixty (60) days after the Effective Date and to serve notice thereof on all parties entitled to such notice. A Fee Claim, with respect to which a Fee Application has been properly filed, shall become an Administrative Expense Claim only to the extent allowed by Final Order. Fee Claims shall be paid either: (i) with respect to Fee Claims which are Allowed Claims on the Effective Date, the amount of such holder's Allowed Claim in one cash payment, within ten (10) days after the Effective Date, from the Debtor; (ii) with respect to Fee Claims which become Allowed Claims after the Effective Date, the amount of such holder's Allowed Claim, in one cash payment from the Debtor within ten (10) days after such Claim becomes an Allowed Fee Claim; or (iii) such other treatment agreed upon by the Debtor and such holder.

2.      <u>Administrative Expense Claims Bar Date.</u> Any other person or entity who claims to hold an Administrative Expense Claim (other than a Fee Claim) shall be required to file with the Bankruptcy Court an application within sixty (60) days after the Effective Date and to serve notice thereof on all parties entitled to such notice. An Administrative Expense Claim with respect to which an application has been properly filed and to which no timely objection has been filed or an objection has been filed but overruled by the Bankruptcy Court, shall become an Allowed Claim to the extent such Claim is allowed by Final Order.

c.      **Priority Tax Claims.** Any holder of an Allowed Priority Tax Claim within the meaning of Bankruptcy Code § 507(a)(8) will be paid in full over in 60 months from the Effective Date with interest thereon at the rate of 3% per annum.

### 6.4      <u>Treatment of Classified Claims and Interests Under the Plan</u>

**Class 1 Claim:   Allowed Secured Claim of BankDirect Capital Finance in the estimated amount of $55,952.98.** The Class 1 Claim shall be paid in full in 60 equal monthly installments of principal plus interest at the rate of 5% per annum. The payments shall begin on the first day of the first month following the Effective Date and continue on the first day of each subsequent month until the Claim is paid in full under the Plan. This Claim is subject to objection and to the extent not secured is an unsecured claim to be treated in Class 3 of this Plan.

This Claimant shall retain its pre-Petition Date Liens securing these Claims.  This Claim is IMPAIRED.

**Class 1A Claim: Allowed Secured Claim of Ag Barn Management LLC in the amount of $10,833.79.**  The Class 1A Claim shall be paid in full in 60 equal monthly installments of principal plus interest at the rate of 6.0% per annum. The payments shall begin on the first day of the first month following the Effective Date and continue on the first day of each subsequent month until the Claim is paid in full under the Plan.

This Claimant shall retain its pre-Petition Date Liens securing this Claim. This Claim is IMPAIRED.

**Class 1B Claim: Allowed Secured Claims of Wayne C. Tyson in the amount of $19,097.83.**  The Class 1B Claims shall be paid in full in 24 equal monthly installments of principal plus interest at the rate of 6.5% per annum. The payments shall begin on the first day of the first month following the Effective Date and continue on the first day of each subsequent month until this Claim is paid in full under the Plan.

Proof of Claim No. 3, for Wayne C. Tyson ("Tyson") is secured by two non-exempt vehicles. As of October 14, 2021 (the "Petition Date"), Tyson claims to hold an Allowed Secured Claim in the amount of $19,097.83 which Tyson claims is oversecured. Because Tyson may be oversecured, the amount owed to Tyson relating to Tyson Proof of Claim No. 3 may be entitled to Tyson's reasonable post-petition attorneys' fees which shall be added to the amount of its claim.

Tyson shall provide the Reorganized Debtor with an invoice reflecting its reasonable and necessary post-petition attorneys' fees within thirty (30) days following entry of an order confirming this Plan. If the Reorganized Debtor objects to the reasonableness or necessity of Tyson's post-petition attorney's fees, the Reorganized Debtor shall file a motion to determine same on or before forty-five (45) days following entry of an order confirming this Plan.  If no such motion is filed, all invoiced amounts shall be deemed to be fully and finally allowed.

If the Reorganized Debtor fails to timely make any required Plan payment to Tyson, the Reorganized Debtor shall be in default and Tyson shall be entitled to send a Notice of Default to the Reorganized Debtor.  If the default is not cured within fifteen (15) days of the sending of such Notice of Default, Tyson may proceed to collect all amounts owed pursuant to applicable non-bankruptcy law without further recourse to the Bankruptcy Court.  Tyson is only required to send two (2) Notices of Default, and upon the third event of default, Tyson may proceed to collect all amounts owed under applicable non-bankruptcy law without recourse to the Bankruptcy Court and without any Notice of Default.  The foregoing default provisions apply to Tyson only and supplant any similar provisions relating to any other creditor specified in the Plan.

Tyson shall retain all his liens on the Reorganized Debtor's Property in its current lien priority to secure repayment of its Allowed Secured Claim.

Nothing herein shall prevent the Debtor from objecting to the claim of Tyson within the time permitted by law.

This Claimant shall retain its pre-Petition Date Liens securing this Claim. This Claim is IMPAIRED.

**Class 2 Claim:  Allowed Secured Claims of FundThrough USA, Inc is estimated to be $8,963.54.**  Class 2 Claims shall be paid in full in 60 equal monthly installments of principal plus interest at the rate of 5% per annum. The payments shall begin on the first day of the first month following the Effective Date and continue on the first day of each subsequent month until the Claim is paid in full under the Plan.  This claim is IMPAIRED.

**Class 3 Claims: Allowed General Unsecured Claims, excluding Insiders are estimated to be $707,881.70.**  Each of the Class 3 Claimants shall be paid a total of fifty percent (50%) of the amount of their Allowed Claims in equal monthly installments over 60 months. The payments shall begin on the first day of the first month following the Effective Date and continue for the next 59 months.  These Claims are IMPAIRED.

    a.    The Texcon Ready Mix, Inc. general unsecured claim will be accepted as undisputed in the sum of $433,881.01; Preferred Ready-Mix LLC's $600k (+) in accounts receivable will be set aside for collection by either agreed outside counsel, the net proceeds of which, if any, from monies collected distributed to the unsecured creditors on a pro rata basis; Preferred Ready-Mix LLC will nonsuit Preferred Ready-Mix LLC's claims against Texcon Ready Mix, Inc. in the pending Harris County 157th State District Court lawsuit, Cause No. 2020-77612, with prejudice; and Texcon Ready Mix, Inc.'s claims in the District Court lawsuit against Robert Foran may proceed without opposition by Preferred Ready-Mix LLC.

**Class 4 Claims: Allowed Unsecured Claims of Insiders.**  The Allowed Unsecured Claims of Insiders, if any, shall not be paid under this Plan.  These claims are IMPAIRED.

**Class 5 Interests: Allowed Equity Interest Holders.**  All Equity Interests shall be retained.  These Interests are not Impaired.

    6.5    **Implementation of the Plan**

    a.    **Source of Payments.** The Debtor intends to make all payments required under the Plan from available cash and income from the business operations of the Debtor.

    b.    **Risk Factors.** *Consider carefully the factors set forth below and the other information set forth in this Plan prior to voting on the Plan. These risk factors should not, however, be regarded as constituting the only risks involved with the Plan and its implementation.*

    1.    Bankruptcy Considerations. Although the Debtor believes that the Plan satisfies all requirements necessary for Confirmation, there can be no assurance that the Court will reach the same conclusion. Moreover, there can be no assurance that modifications of the Plan will not be required for Confirmation or that such modifications

would not necessitate the re- solicitation of votes to accept the Plan as modified.

### c.     Powers and Duties of the Plan Agent.

As of the Effective Date, the Plan Agent shall be appointed under section 1123(b)(3)(B) of the Bankruptcy Code, and shall serve in such capacity, for the purpose of collecting the Receivables. The Debtor shall continue to handle all other administrative requirements under the Plan and the Code including claims objections, fee objections and filing requirements with the Office of the U.S. Trustee.

On the Effective Date, the Receivables shall vest automatically in the Plan Agent free and clear of all Liens, claims, encumbrances, and other interests. The Plan shall be considered a motion pursuant to sections 105, 363, and 365 of the Bankruptcy Code for such relief. The transfer of the Receivables to the Plan Agent shall be made exclusively for the benefit and on behalf of holders of any secured creditors claiming a lien on such accounts and the Class 4 Allowed General Unsecured Claims. Subject to the fees and expenses of the Plan Agent and her professionals, Class 4 Allowed General Unsecured Claims shall receive distribution from proceeds of the Receivables. The Plan Agent shall not be deemed a successor in interest of the Debtor for any purpose other than as specifically set forth herein.

In no event shall the return to the Class 4 General Unsecured Creditors under the Plan exceed the full amount of their Allowed Claims plus 3% per annum interest thereon. For the avoidance of doubt, the disbursement to holders of Class 4 General Unsecured Creditors will be first reduced by any amount paid to the Plan Agent on account of her Allowed fees and costs and those of her retained professionals and any amounts due to any secured creditors with an Allowed Claim against the Receivables. Such payments to the Plan Agent to be made from collections of the Receivables. If there are no funds from collections to pay the Plan Agent the Debtor will pay her fees at her standard hourly rate of $400 per hour

The powers, rights, and responsibilities of the Plan Agent, all of which shall arise upon the occurrence of the Effective Date, shall include, but not be limited to:

1.     collecting the Receivables under the jurisdiction of the Bankruptcy Court;

2.     asserting, prosecuting, objecting to, pursuing, compromising and settling in accordance with the Plan Agent's reasonable business judgment, all matters affecting the Estate relating to the Receivables, without further order of the Bankruptcy Court;

3.     asserting and enforcing all relevant legal or equitable remedies and defenses belonging to the Debtor or its Estate, including, without limitation, setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code as they relate to the Receivables;

4.     in conjunction with the Debtor acting on behalf of the Debtor in adversary proceedings and contested matters then pending or that can be commenced

in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, dispute, or adjust any Claim relating to a Receivable and otherwise pursue actions involving the Receivables of the Debtor that could arise or be asserted at any time under the Bankruptcy Code, unless otherwise waived, relinquished or transferred in the Plan;

5.      taking such actions the Plan Agent deems appropriate in her reasonable business judgment against any Person with respect to a Claim or Cause of Action relating to a Receivable and commencing any process or proceeding in the Bankruptcy Court or in any court of competent jurisdiction in accordance with applicable laws;

6.      making Distributions to holders of all Class 4 Allowed Claims, in accordance with the Plan;

7.      proceeding with and employing all discovery devices permitted under applicable law, including Rule 2004 of the Bankruptcy Rules, in order to investigate any Claims or Causes of Action relating to the Receivables;

8.      employing, without further order of the Bankruptcy Court, professionals or other Persons to assist it in carrying out her duties hereunder, and compensating and reimbursing the expenses of those professionals and other persons, on the terms to be agreed to by the Plan Agent and such professionals and other persons, without further order of the Bankruptcy Court, including but not limited to the retention of counsel on a contingency or hourly fee basis, as the case may be, in regards to the Receivables

9.      investing Cash in accordance with section 345 of the Bankruptcy Code, withdrawing and making Distributions of Cash to holders of Class 4 Allowed Claims and paying taxes and other obligations owed by the Debtor or incurred by the Plan Agent in accordance with the Plan;

10.     executing and delivering all documents, and taking all actions, necessary to further consummation of the Plan;

11.     implementing and/or enforcing all provisions of the Plan relating to the Receivables; and

12.     such other powers as may be vested in or assumed by the Plan Agent, or as may be needed or appropriate, to carry out the provisions of the Plan.

**d.      Appointment of the Plan Agent.**

The Debtor has agreed that Allison Bynum shall be appointed as the Plan Agent. The Plan Agent shall be deemed the Debtor's sole representative in accordance with section 1123 of the

Bankruptcy Code relating to the Receivables and shall have all powers, authority, and responsibilities specified in the Plan, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code relating to the Receivables only.

   **e.    Fees of the Plan Agent and Expenses Incurred On or After the Effective Date.**

   Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Agent in connection with the Plan Agent's duties shall be paid on a monthly basis without any further notice to or action, Order, or approval of the Bankruptcy Court, in Cash if such amounts relate to any actions taken hereunder; *provided* that the Plan Agent will only be reimbursed for its reasonable and documented out-of-pocket costs and expenses in accordance with a budget that is acceptable to the Plan Agent and the Debtor.

   The Plan Agent shall receive, as compensation for her services under this Plan, a reasonable hourly rate equal to $400 per hour. The fees, costs, and expenses of the Plan Agent and Plan Agent's retained professionals pursuant to Section 6.03(h) shall be paid by on a monthly basis in arrears. Prior to making any payment to itself under this Plan, the Plan Agent shall file a notice of fees and expenses with the Court, and all parties in interest shall have fourteen (14) days to object to the filed notice of fees and expenses (or any portion thereof). If no objection is made within such fourteen (14) day period, the Plan Agent may make the payment to Plan Agent or Plan Agent's retained professional. If a timely objection is made, Plan Agent shall not make such payment until the objection is resolved. Any objection to Plan Agent or Plan Agent's retained professional's proposed fees that cannot be resolved by the Plan Agent and the objecting party shall be resolved by the Court upon notice and hearing.

   Plan Agent's payments and the payments to Plan Agent's retained professionals pursuant to Section 6.03(h) will come from the proceeds of the Receivables. If Plan Agent so requests, Debtor will provide Plan Agent $2,500 to cover up front fees and costs, which funds will be reimbursed by Plan Agent to Debtor in the amount provided.

   Attorneys retained by Plan Agent to pursue recoveries shall be retained on a contingency retention schedule up to 35% and reasonable expenses. The Plan Agent may set the retention schedule.

   To the extent Plan Agent retains herself in her capacity pursue recovery on the Receivables Agent's fees related to such collections shall be subject to a contingency retention schedule.

   **6.6    Feasibility of the Plan**

   The Debtor believes that the Plan is feasible because all creditors with Allowed Claims will be paid under fair and equitable terms.  Projections for the feasibility of the Plan are attached hereto as **Exhibit "1"** and incorporated herein by this reference.  The Monthly Operating Reports generated during the Chapter 11 are attached hereto as **Exhibit "2"** and incorporated herein by this reference.

**6.7**     **Provisions Regarding Distributions and Objections to Claims**

    **a.**     **Time of Payment.** The first month in which payments will be made under this Plan will be the month in which the Effective Date falls, unless otherwise provided by the terms of this Plan. All payments required under this Plan shall be made on the Effective Date unless otherwise agreed to by the holder of such Claim and the Debtor or unless otherwise stated herein this Plan.

    **b.**     **Delivery of Payment.** All payments or distributions required under this Plan shall be made to holder of the applicable Claim at: (i) the address set forth on the Proofs of Claim filed by such holders (or at the last known address of such holders if no Proof of Claim is filed or if the Debtor has been notified of a change of address); (ii) the address set forth in any written notices of address change delivered to the Debtor after the date of any related Proof of Claim; or (iii) if neither of the foregoing is applicable, at the addresses reflected in the Debtor's bankruptcy schedules, unless otherwise agreed to by the holder of such Claim and the Debtor.

    **c.**     **No Distribution Pending Allowance or Estimation of Claims.** No payments or distributions shall be made with respect to all or any portion of a Contested Claim unless and until such Claim becomes an Allowed Claim or Allowed Interest, as determined by Final Order. No holder of a Claim shall be entitled to any payment under the Plan if such holder has retained property of the Estate.

    **d.**     **Objections to Claims.** Any party authorized by the Bankruptcy Code may object to the allowance of prepetition Claims at any time prior to sixty (60) days after the Effective Date or, as to Claims based upon the Debtor's rejection pursuant to this Plan of an executory contract or unexpired lease, at any time prior to thirty (30) days after the filing of any such rejection Claim or rejection pursuant to this Plan. All Contested Claims shall be litigated to Final Order; provided, however, that the Reorganized Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court. Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

    **e.**     **Suspension of Payments on Disputed Claims.** If any Claim has been objected to within the time required, the Debtor shall segregate and set aside, from the funds on hand for distribution to the Claimant's Class, funds sufficient to satisfy the payment otherwise due on the Claim according to the provisions of the Plan. In the event that the claim objection is overruled or a dispute is resolved favorably to the party asserting the Claim, then the funds shall be paid to the Creditor in accordance with applicable Class

provisions. In the event that the Disputed Claim is disallowed, the funds segregated in deference to the Claim shall be disbursed to other parties in interest, according to the applicable provisions of the Plan.

### 6.8   Executory Contracts

    **a.**    **General Provisions.** "Assumption" of an executory contract or unexpired lease means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any. If you object to the assumption, and if applicable the assignment, of your unexpired lease or executory contract under the Plan, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to Confirmation, unless the Court has set an earlier time.

    **b.**    **General Rejection of Executory Contracts and Unexpired Leases.** Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under section 6.08(b) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, or that were entered after the Petition Date, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

### 6.9   Default

No default in the performance of this Plan shall automatically result in the termination of the Plan or constitute a revocation of the Confirmation Order. If any party in interest believes that the Debtor is in default of any requirement of this Plan, such party shall provide written notice of such claimed default to the Debtor and its counsel prior to filing a motion with the Bankruptcy Court regarding the alleged noncompliance or otherwise seeking Bankruptcy Court enforcement of the terms of this Plan.

## ARTICLE VII.  RESERVATION OF CLAIMS

### 7.1   Reservation of Claims and Causes of Action

Any and all claims, causes of action, cross claims, or counterclaims held or assertable by the Debtor, including but not limited to: (i) any claim or cause of action under a policy of liability insurance or otherwise; (ii) the Avoidance Actions; and (iii) any and all claims, causes of action, counterclaims, demands, controversies, against third parties on account of costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, and executions of any nature, type, or description which the Debtor has or may come to have, including, but not limited to, negligence, gross negligence, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to

inspect, environmental due diligence, negligent loan processing and administration, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies (both civil and criminal), racketeering activities, securities and antitrust violations, tying arrangements, deceptive trade practices, breach or abuse of fiduciary duty, breach of any alleged special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, whether or not in connection with or related to this Plan, at law or in equity, in contract or in tort, or otherwise, known or unknown, suspected or unsuspected, are hereby preserved and retained for enforcement by the Debtor as of the Confirmation Date. It is the intent of the Debtor that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtor's Schedules and Statements. The Debtor has claims for unpaid accounts receivable.  The Debtor also has a claim for the failure of the Receiver to return all the tools and equipment that were seized prior to the filing of the case.

### 7.2    Return of Fraudulent Transfers

Any Creditor determined to have received a transfer that is voidable pursuant to sections 544, 547, 548, 549, and/or 550 of the Bankruptcy Code or any other applicable law shall be required to remit to the Debtor the determined amount of the avoided transfer prior to receiving any distribution under this Plan.

## ARTICLE VIII.  EFFECT OF CONFIRMATION, DISCHARGE, RELEASES AND INJUNCTION

### 8.1    Vesting of Property

On the Confirmation Date of the Plan, all property of the Estate shall vest in the Debtor pursuant to sections 1141(b) and (c) of the Bankruptcy Code, free and clear of all Claims and interests except as otherwise provided in this Plan. If the Debtor defaults in performing under the provisions of the Plan and the Chapter 11 case is converted to Chapter 7, all property vested in the Debtor and all subsequently acquired property owned as of or after the conversion date shall revest and constitute property of the bankruptcy estate in the Chapter 7 case. This Plan will evidence the release of any and all Liens or encumbrances against all property dealt with by the Plan, unless such Lien or encumbrance is specifically retained in the Plan.

### 8.2    Plan Creates New Obligations

Except as otherwise provided in the Plan, (1) the payment terms promised in the Plan constitute new contractual obligations that replace any payment terms that existed prior to the Effective Date, and (2) all rights and obligations other than those new payment terms continue to apply.

### 8.3    Legal Binding Effect

The provisions of this Plan shall bind all holders of Claims and Interests, whether or not they accept this Plan.

### 8.4    Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before Confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### 8.5    Satisfaction of Claims and Interests

Except as otherwise provided by the Plan, the consideration distributed under the Plan shall be in complete satisfaction of all Claims of any Creditor, including Claims arising prior to the Effective Date.

### 8.6    Temporary Injunction

Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation Order shall provide, among other things, that all Creditors and persons who have held, hold, or may hold Claims or Interests against the Debtor, are enjoined on and after the Effective Date as long as the Plan is not in default and has not been completed against the: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtor or any third-party guarantor on account of Claims against the Debtor; (ii) enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or any third-party guarantor or any assets or property of same; or (iii) creation, perfection, or enforcement of any encumbrance of any kind against the Debtor or any third-party guarantor arising from a Claim. Such injunction expires at the end of the Plan term at which time all Allowed Claims will have been paid in accordance with the terms of the Plan.

### 8.7    Modification of the Plan

**a.    Prior to Confirmation.** The Debtor may modify this Plan at any time prior to Confirmation, provided the modification complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code. Upon the filing of any such modifications with the Bankruptcy Court, the Plan, as modified, becomes the Plan.

**b.    After Confirmation.** The Debtor may modify the Plan at any time after Confirmation. The Debtor or its attorney shall provide notice of any such proposed modification to all Creditors and other parties in interest in these Chapter 11 proceedings. If, in the opinion of the Bankruptcy Court, the

modification does not materially and adversely affect the interest of the Creditors, the Bankruptcy Court may modify the Plan without notice to Creditors, or may modify the Plan upon notice only to those Creditors that the Bankruptcy Court deems to be materially and adversely affected.

**8.8**   **Retention of Jurisdiction**

The Bankruptcy Court shall retain jurisdiction over this Bankruptcy Case after Confirmation of the Plan to the fullest extent provided for, or allowed, under the Bankruptcy Code and other applicable law. Specifically, but not by way of limitation, the Bankruptcy Court shall retain jurisdiction for the following purposes:

**a.**   to consider and effect any modification of this Plan under Bankruptcy Code § 1127;

**b.**   to hear and determine all controversies, suits and disputes that arise in connection with the interpretation, implementation, effectuation, consummation or enforcement of this Plan;

**c.**   to hear and determine all requests for compensation and/or reimbursement of expenses for the period commencing on the Petition Date through the Confirmation Date;

**d.**   to hear and determine all objections to Claims and Interests, and to determine the appropriate classification of any Claim or Interest, and other controversies, suits and disputes that may be pending at or initiated after the Confirmation Date, except as provided in the Confirmation Order;

**e.**   to hear and determine all causes of action;

**f.**   to consider and act on such other matters consistent with this Plan as may be provided in the Confirmation Order;

**g.**   to make such Orders as are necessary and appropriate to carry out and implement the provisions of this Plan; including to effect the further assurances provided in this Plan;

**h.**   to approve the reasonableness of any payments made or to be made, within the meaning of Bankruptcy Code § 1129(a)(4);

**i.**   to exercise the jurisdiction granted pursuant to sections 505(a) and (b) of the Bankruptcy Code to determine any and all federal, state, Commonwealth, local and foreign tax liabilities of, and any and all refunds of such taxes paid by the Debtor;

**j.**   to hear and determine any issues or matters in connection with any property not timely claimed as provided in this Plan; and

     **k.**     to determine any and all motions, applications, adversary proceedings and Contested matters whether pending in the Case as of the Effective Date or brought subsequently by the Debtor.

Nothing contained herein shall be construed to limit the rights of the Debtor to commence or prosecute any claim in any court of competent jurisdiction.

## ARTICLE IX.  MISCELLANEOUS PROVISIONS

### 9.1    Request for Relief Under Bankruptcy Code § 1129(b)

In the event any Impaired Class of Claims or Interests shall fail to accept this Plan in accordance with Bankruptcy Code § 1129(a), the Debtor requests that the Bankruptcy Court confirm this Plan in accordance with the provisions of Bankruptcy Code § 1129(b), as modified by Section 1191.

### 9.2    Headings

All headings utilized in this Plan are for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

### 9.3    Due Authorization

Each and every Claimant who elects to participate in the distributions provided for herein warrants that such Claimant is authorized to accept, in consideration of such Claim against the Debtor, the distributions provided for in this Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such Claimant under this Plan.

### 9.4    Further Assurances and Authorizations

The Debtor shall seek such orders, judgments, injunctions, and rulings that may be required to carry out further the intentions and purposes, and to give full effect to the provisions of, this Plan.

### 9.5    Applicable Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties, and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the internal laws of the State of Texas without reference to the laws of other jurisdictions.

### 9.6    No Interest

Except as expressly stated in this Plan, or allowed by the Bankruptcy Court, no interest, penalty, or late charge is to be Allowed on any Claim subsequent to the Petition Date.

### 9.7      Post-Confirmation Actions

After Confirmation, the Debtor may, with the approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interests of the Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and effect of the Plan.

### 9.8      Notices of Default

Notwithstanding anything contained herein to the contrary, no Claimant shall have the right to exercise any rights under the Plan unless and until the Debtor fails to cure any default within fourteen (14) days of receipt of written notice of such default to the Debtor and the undersigned counsel.

### 9.9      Notices

All notices, requests, elections, or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested. Notices provided to the Debtor under this Plan shall be sent to the Debtor at 8750 Scranton Street, Houston, TX 77041. A copy of all notices provided to the Debtor shall be sent to the Debtor's attorney, Joyce W. Lindauer, 1412 Main Street, Suite 500, Dallas, TX 75202; Tel: (972) 503-4033; Fax: (972) 503-4034; Email: joyce@joycelindauer.com.

### 9.10      Payment Dates

Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the next Business Day, except as may be provided in negotiable instruments requiring such payments.

### 9.11      De Minimis Distribution

No single distribution payment of less than $5.00 shall be required to be made to any holder of an Allowed Claim. Rather, any such de minimis distribution amount shall be held by the Debtor, added to the amount of the next distribution, and remitted to the holder of the Allowed Claim upon reaching a total greater than $5.00.

### 9.12      Reports

The Debtor shall file with the Bankruptcy Court monthly reports in a form reasonably acceptable to the U.S. Trustee. The obligation of the Debtor to file reports terminates on the Effective Date of the Plan, or conversion or dismissal of the Chapter 11 case.

### 9.13      Discharge

Nothing contained in this Plan is intended to violate provisions of 11 U.S.C. § 524(e).

### 9.14    Remedies

Under § 1191(c)(3)(B), and to the extent the Plan must be confirmed non-consensually under § 1191(b), this Plan provides "appropriate remedies" to protect holders of claims if payments are not made. In the event that payments are not made as approved by the Court then the Sub V Trustee may provide a notice of default to the Debtor and after ten (10) days should the default not be cured then the Sub V Trustee may seek to reopen the case and convert the case to one under Chapter 7 of the code or may seek to liquidate the assets of the debtor with the cooperation of the Debtor in order to pay the Allowed Claims of Creditors.

If the Plan does not have sufficient votes to confirm consensually the Plan must be confirmed non-consensually under § 1191(b). The Debtor will show that the Plan provides for and meets the requirements of § 1191(c)(1), (2) and (3), including "appropriate remedies" to protect holders of claims if payments are not made.

### 9.15    Distributions to Creditors by Subchapter V Trustee.

Distributions will be made in accordance with the plan calculations provided by the Debtor. The Trustee is not responsible for calculating or correcting the payment amounts due under the Plan. Within seven (7) business days of the expiration of objection period applicable to a Quarterly report, the Subchapter V Trustee shall disburse such funds received from the Reorganized Debtor according to the Plan. Funds from any disbursement check written by the Subchapter V Trustee, where the check remains unnegotiated for more than 60 days, may be redistributed *pro rata* to other Class 1 unsecured creditors, as provided for under the Plan, or may be placed with this Court's unclaimed funds register pursuant to 28 U.S.C. 2042, at the discretion of the Subchapter V Trustee. In the event the Subchapter V Trustee has insufficient funds to make any distribution under the Plan approved by this Order, Plan Payments may be adjusted during the life of the Plan without further order of the Court to account for any Plan Payment adjustments. Any disbursement made by the Subchapter V Trustee following entry of this Order on account of a claim which is a satisfaction of the claim are deemed authorized disbursements. The Reorganized Debtor will pursue the recovery of any disbursement made on account of a claim which is subsequently withdrawn and/or satisfied.

### 9.16    Subchapter V Trustee Disbursement Reports

The Subchapter V Trustee shall provide all required reports to the United States Trustee for review, during the period in which the Subchapter V Trustee continues to make plan payments. Upon completion of all plan payments, the Subchapter V Trustee should submit the final report and final account of the administration of the estate to the United States Trustee for review pursuant to section 1183(b)(1). After review, the final report and account will be filed with the Court.

### 9.17    Subchapter V Requirements.

Section 1191(c)(1) – with respect to a class of secured claims (Classes 1 and 2), the plan provides that the holder of such claims retain the liens securing the claims to the extent of the allowed amount of such claims (§ 1129(A)(i)(I)); and that each holder of a claim of such class receives deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the Effective Date of the Plan, of at least the value of such holder's interest in the estate's interest

in such property (§ 1129(A)(i)(II)) or for the realization by such holders of the indubitable equivalent of such claims (§ 1129(A)(iii)).

Section 1191(c)(2) – as of the Effective Date of the Plan, the Plan provides that all of the projected disposable income of the Debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the Court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan (§ 1191 (c)(2)(A)). The disposable income of a business is defined in § 1191(d)(2). The proposed payments under the Plan meet these requirements.

Dated: February 18, 2022.

Respectfully submitted,

_/s/ Joyce W. Lindauer_
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St. Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Debtor

_/s/ Robert Foran_
Authorized Representative of the Debtor

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 18, 2022, a true and correct copy of the foregoing document was served via email pursuant to the Court's CM/ECF system upon the parties receiving electronic notice in this case listed below.

Robert W Berleth on behalf of Attorney Robert Berleth
rberleth@berlethlaw.com

Allison D Byman
adb@bymanlaw.com,
adb@trustesolutions.net;rww.trustee1@gmail.com;cadb11@trustesolutions.net;rah@bymanlaw.com

Hector Duran, Jr on behalf of U.S. Trustee US Trustee
Hector.Duran.Jr@usdoj.gov

Jessica Lee Hoff on behalf of Debtor Preferred Ready-Mix LLC
jhoff@hofflawoffices.com, JHoff@jubileebk.net

Jeffery B Kaiser on behalf of Creditor Texcon Ready Mix, Inc.
jkaiser@kaiser-law.com, admin.three@kaiser-law.com

Joyce Williams Lindauer on behalf of Debtor Preferred Ready-Mix LLC
joyce@joycelindauer.com, dian@joycelindauer.com

Derek W Loetzerich on behalf of Creditor Cameron Rosele
derek@loetzerichlaw.com

John June-chul Na on behalf of Creditor M & N Law Firm PLLC
john@mnnlawfirm.com, pete@mnnlawfirm.com

Karina Shareen on behalf of Creditor AG Barn Management, LLC
kshareen@twpdlaw.com

Brendon D Singh on behalf of Creditor Alisons Inc. LLC
Bsingh@ts-llp.com, ecf@ctsattorneys.com;corraltransinghllp@jubileebk.net

Brendon D Singh on behalf of Creditor Wayne C. Tyson
Bsingh@ts-llp.com, ecf@ctsattorneys.com;corraltransinghllp@jubileebk.net

US Trustee
USTPRegion07.HU.ECF@USDOJ.GOV

Lisa Elizabeth Ventress on behalf of Creditor Ray Young, Jr
lisa@theventressfirm.com


    */s/ Joyce W. Lindauer*            
Joyce W. Lindauer

**CHAPTER 11 DEBTOR PROJECTIONS**
**Preferred Ready-Mix LLC**

2/18/2022

| | Month 1 April | Month 2 May | Month 3 June | Month 4 July | Month 5 August |
|---|---|---|---|---|---|
| **INCOME** | | | | | |
| Cash Receipts | 75,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 |
| **NET INCOME** | 75,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 |
| **EXPENSES** | | | | | |
| Cash Disbursements | 37,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 |
| **TOTAL EXPENSES** | 37,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 |
| **PLAN PAYMENTS BY CLASS** | | | | | |
| 0  Allowed Administrative Claims | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| 1  Allowed Secured Claims of BankDirect Capital Finance | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 |
| 1A Allowed Secured Claims of Ag Barn Management LLC | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 |
| 1B Allowed Secured Claims of Wayne C. Tyson | 850.74 | 850.74 | 850.74 | 850.74 | 850.74 |
| 2  Allowed Secured Claim of FundThrough USA Inc. | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 |
| 3  Allowed General Unsecured Claims (excl. Insiders) | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 |
| 4  Allowed Unsecured Claims of Insiders | | | | | |
| 5  Allowed Equity Interest Holders | | | | | |
| **TOTAL PLAN PAYMENTS** | 13,785.24 | 13,785.24 | 13,785.24 | 13,785.24 | 13,785.24 |
| **NET INCOME** | 23,714.76 | 48,714.76 | 48,714.76 | 48,714.76 | 48,714.76 |
| **CUMULATIVE INCOME** | 23,714.76 | 72,429.52 | 121,144.28 | 169,859.04 | 218,573.80 |

Notes on Income:
   This is a seasonal business.  Work is slow in winter months due to weather issues, typically from December to April.

**EXHIBIT "1"**

| | Month 6 September | Month 7 October | Month 8 November | Month 9 December | Month 10 January | Month 11 February | Month 12 March | Month 13 April | Month 14 May | Month 15 June |
|---|---|---|---|---|---|---|---|---|---|---|
| | 125,000.00 | 125,000.00 | 125,000.00 | 60,000.00 | 60,000.00 | 65,000.00 | 70,000.00 | 75,000.00 | 125,000.00 | 125,000.00 |
| | 125,000.00 | 125,000.00 | 125,000.00 | 60,000.00 | 60,000.00 | 65,000.00 | 70,000.00 | 75,000.00 | 125,000.00 | 125,000.00 |
| | 62,500.00 | 62,500.00 | 62,500.00 | 30,000.00 | 30,000.00 | 32,500.00 | 35,000.00 | 37,500.00 | 62,500.00 | 62,500.00 |
| | 62,500.00 | 62,500.00 | 62,500.00 | 30,000.00 | 30,000.00 | 32,500.00 | 35,000.00 | 37,500.00 | 62,500.00 | 62,500.00 |
| | 5,000.00 | 5,000.00 | | | | | | | | |
| | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 |
| | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 |
| | 850.74 | 850.74 | 850.74 | 850.74 | 850.74 | 850.74 | 850.74 | 850.74 | 850.74 | 850.74 |
| | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 |
| | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 |
| | 13,785.24 | 13,785.24 | 8,785.24 | 8,785.24 | 8,785.24 | 8,785.24 | 8,785.24 | 8,785.24 | 8,785.24 | 8,785.24 |
| | 48,714.76 | 48,714.76 | 53,714.76 | 21,214.76 | 21,214.76 | 23,714.76 | 26,214.76 | 28,714.76 | 53,714.76 | 53,714.76 |
| | 267,288.56 | 316,003.32 | 369,718.08 | 390,932.84 | 412,147.60 | 435,862.36 | 462,077.12 | 490,791.88 | 544,506.64 | 598,221.40 |

| | Month 16 July | Month 17 August | Month 18 September | Month 19 October | Month 20 November | Month 21 December | Month 22 January | Month 23 February | Month 24 March | Month 25 April |
|---|---|---|---|---|---|---|---|---|---|---|
| | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 60,000.00 | 60,000.00 | 65,000.00 | 70,000.00 | 75,000.00 |
| | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 60,000.00 | 60,000.00 | 65,000.00 | 70,000.00 | 75,000.00 |
| | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 30,000.00 | 30,000.00 | 32,500.00 | 35,000.00 | 37,500.00 |
| | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 30,000.00 | 30,000.00 | 32,500.00 | 35,000.00 | 37,500.00 |
| | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 |
| | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 |
| | 850.74 | 850.74 | 850.74 | 850.74 | 850.74 | 850.74 | 850.74 | 850.74 | 850.74 | |
| | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 |
| | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 |
| | 8,785.24 | 8,785.24 | 8,785.24 | 8,785.24 | 8,785.24 | 8,785.24 | 8,785.24 | 8,785.24 | 8,785.24 | 7,934.50 |
| | 53,714.76 | 53,714.76 | 53,714.76 | 53,714.76 | 53,714.76 | 21,214.76 | 21,214.76 | 23,714.76 | 26,214.76 | 29,565.50 |
| | 651,936.16 | 705,650.92 | 759,365.68 | 813,080.44 | 866,795.20 | 888,009.96 | 909,224.72 | 932,939.48 | 959,154.24 | 988,719.74 |

| | Month 26 May | Month 27 June | Month 28 July | Month 29 August | Month 30 September | Month 31 October | Month 32 November | Month 33 December | Month 34 January | Month 35 February |
|---|---|---|---|---|---|---|---|---|---|---|
| | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 60,000.00 | 60,000.00 | 65,000.00 |
| | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 60,000.00 | 60,000.00 | 65,000.00 |
| | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 30,000.00 | 30,000.00 | 32,500.00 |
| | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 30,000.00 | 30,000.00 | 32,500.00 |
| | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 |
| | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 |
| | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 |
| | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 |
| | 7,934.50 | 7,934.50 | 7,934.50 | 7,934.50 | 7,934.50 | 7,934.50 | 7,934.50 | 7,934.50 | 7,934.50 | 7,934.50 |
| | 54,565.50 | 54,565.50 | 54,565.50 | 54,565.50 | 54,565.50 | 54,565.50 | 54,565.50 | 22,065.50 | 22,065.50 | 24,565.50 |
| | 1,043,285.24 | 1,097,850.74 | 1,152,416.24 | 1,206,981.74 | 1,261,547.24 | 1,316,112.74 | 1,370,678.24 | 1,392,743.74 | 1,414,809.24 | 1,439,374.74 |

| | Month 36 March | Month 37 April | Month 38 May | Month 39 June | Month 40 July | Month 41 August | Month 42 September | Month 43 October | Month 44 November | Month 45 December |
|---|---|---|---|---|---|---|---|---|---|---|
| | 70,000.00 | 75,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 60,000.00 |
| | 70,000.00 | 75,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 60,000.00 |
| | 35,000.00 | 37,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 30,000.00 |
| | 35,000.00 | 37,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 30,000.00 |
| | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 |
| | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 |
| | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 |
| | 6,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 |
| | 7,934.50 | 8,934.50 | 8,934.50 | 8,934.50 | 8,934.50 | 8,934.50 | 8,934.50 | 8,934.50 | 8,934.50 | 8,934.50 |
| | 27,065.50 | 28,565.50 | 53,565.50 | 53,565.50 | 53,565.50 | 53,565.50 | 53,565.50 | 53,565.50 | 53,565.50 | 21,065.50 |
| | 1,466,440.24 | 1,495,005.74 | 1,548,571.24 | 1,602,136.74 | 1,655,702.24 | 1,709,267.74 | 1,762,833.24 | 1,816,398.74 | 1,869,964.24 | 1,891,029.74 |

| | Month 46 January | Month 47 February | Month 48 March | Month 49 April | Month 50 May | Month 51 June | Month 52 July | Month 53 August | Month 54 September | Month 55 October |
|---|---|---|---|---|---|---|---|---|---|---|
| | 60,000.00 | 65,000.00 | 70,000.00 | 75,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 |
| | 60,000.00 | 65,000.00 | 70,000.00 | 75,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 | 125,000.00 |
| | 30,000.00 | 32,500.00 | 35,000.00 | 37,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 |
| | 30,000.00 | 32,500.00 | 35,000.00 | 37,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 |
| | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 |
| | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 |
| | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 |
| | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 |
| | 8,934.50 | 8,934.50 | 8,934.50 | 8,934.50 | 8,934.50 | 8,934.50 | 8,934.50 | 8,934.50 | 8,934.50 | 8,934.50 |
| | 21,065.50 | 23,565.50 | 26,065.50 | 28,565.50 | 53,565.50 | 53,565.50 | 53,565.50 | 53,565.50 | 53,565.50 | 53,565.50 |
| | 1,912,095.24 | 1,935,660.74 | 1,961,726.24 | 1,990,291.74 | 2,043,857.24 | 2,097,422.74 | 2,150,988.24 | 2,204,553.74 | 2,258,119.24 | 2,311,684.74 |

| | Month 56 November | Month 57 December | Month 58 January | Month 59 February | Month 60 March |
|---|---|---|---|---|---|
| | 125,000.00 | 60,000.00 | 60,000.00 | 65,000.00 | 70,000.00 |
| | 125,000.00 | 60,000.00 | 60,000.00 | 65,000.00 | 70,000.00 |
| | 62,500.00 | 30,000.00 | 30,000.00 | 32,500.00 | 35,000.00 |
| | 62,500.00 | 30,000.00 | 30,000.00 | 32,500.00 | 35,000.00 |
| | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 | 1,055.90 |
| | 209.45 | 209.45 | 209.45 | 209.45 | 209.45 |
| | 169.15 | 169.15 | 169.15 | 169.15 | 169.15 |
| | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 |
| | 8,934.50 | 8,934.50 | 8,934.50 | 8,934.50 | 8,934.50 |
| | 53,565.50 | 21,065.50 | 21,065.50 | 23,565.50 | 26,065.50 |
| | 2,365,250.24 | 2,386,315.74 | 2,407,381.24 | 2,430,946.74 | 2,457,012.24 |

Fill in this information to identify the case:

Debtor Name **Preferred Ready-Mix LLC**

United States Bankruptcy Court for the: Southern District of Texas

Case number: **21-33369**

**X** Check if this is an amended filing

## Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11                    12/17

| | | | |
|---|---|---|---|
| Month: | 10/26/2021 | Date report filed: | 10/01/2021 |
| | | | MM / DD / YYYY |
| Line of business: | CONCRETE | NAISC code: | 3273 |

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party:                **ROBERT FORAN**

Original signature of responsible party

Printed name of responsible party      **ROBERT FORAN**

## ▮ 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

| | | Yes | No | N/A |
|---|---|:---:|:---:|:---:|
| | **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A.*** | | | |
| 1. | Did the business operate during the entire reporting period? | ☐ | ☑ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☑ | ☐ | ☐ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☑ | ☐ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☑ | ☐ | ☐ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |
| | **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B.*** | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. | Has anyone made an investment in your business? | ☑ | ☐ | ☐ |

Debtor Name  Preferred Ready-Mix LLC                    Case number  21-33369

17. Have you paid any bills you owed before you filed bankruptcy?  ❏ ☑ ❏

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?  ❏ ☑ ❏

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

    This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

    $1307.62

20. **Total cash receipts**

    Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

    Report the total from *Exhibit C* here.

    $ 2185

21. **Total cash disbursements**

    Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

    Report the total from *Exhibit D* here.

    – $ 836

22. **Net cash flow**

    Subtract line 21 from line 20 and report the result here.
    This amount may be different from what you may have calculated as *net profit*.

    + $ 1349

23. **Cash on hand at the end of the month**

    Add line 22 + line 19. Report the result here.

    Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

    = $ 2656.62

    This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**  $ 0.00

    *(Exhibit E)*

Debtor Name  Preferred Ready-Mix LLC                    Case number  21-33369

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you
have sold. Include amounts owed to you both before, and after you filed bankruptcy.  Label it *Exhibit F*.
Identify who owes you money, how much is owed, and when payment is due. Report the total from
*Exhibit F* here.

25.  **Total receivables**                                                        $  664,359.87

    *(Exhibit F)*

## 5. Employees

26.  What was the number of employees when the case was filed?                        12

27.  What is the number of employees as of the date of this monthly report?            4

## 6. Professional Fees

28.  How much have you paid this month in professional fees related to this bankruptcy case?          $  0.00

29.  How much have you paid in professional fees related to this bankruptcy case since the case was filed?  $  30,000.00

30.  How much have you paid this month in other professional fees?                              $  0.00

31.  How much have you paid in total other professional fees since filing the case?                  $  0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month.
Projected figures in the first month should match those provided at the initial debtor interview, if any.

|  | Column A | | Column B | | Column C |
|---|---|---|---|---|---|
|  | **Projected** | − | **Actual** | = | **Difference** |
|  | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. **Cash receipts** | $_____ | − | $ 2,185.00 | = | $ 0.00 |
| 33. **Cash disbursements** | $_____ | − | $ 836.00 | = | $ 0.00 |
| 34. **Net cash flow** | $_____ | − | $ 1,349.00 | = | $ 0.00 |

35.  Total projected cash receipts for the next month:                              $  44,018.10

36.  Total projected cash disbursements for the next month:                        − $  18,519.39

37.  Total projected net cash flow for the next month:                            = $  25,498.71

Debtor Name  Preferred Ready-Mix LLC

Case number  21-33369

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☐  38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

☐  39.  Bank reconciliation reports for each account.

☐  40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐  41.  Budget, projection, or forecast reports.

☐  42.  Project, job costing, or work-in-progress reports.

Fill in this information to identify the case:

Debtor Name **Preferred Ready-Mix LLC**

United States Bankruptcy Court for the: Southern District of Texas

Case number: **21-33369**

☐ Check if this is an amended filing

## Official Form 425C

### Monthly Operating Report for Small Business Under Chapter 11                     12/17

Month:         **11/01/2021**                    Date report filed:   **11/01/2021**
                                                                       MM / DD / YYYY
Line of business:   **CONCRETE**                 NAISC code:          **3273**

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party:                    **ROBERT FORAN**

Original signature of responsible party _____

Printed name of responsible party     **ROBERT FORAN**

### 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

|  | | Yes | No | N/A |
|---|---|:---:|:---:|:---:|
| | **If you answer No to any of the questions in lines 1-9, attach an explanation and label it Exhibit A.** | | | |
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☑ | ☐ | ☐ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☑ | ☐ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☑ | ☐ | ☐ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |
| | **If you answer Yes to any of the questions in lines 10-18, attach an explanation and label it Exhibit B.** | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. | Has anyone made an investment in your business? | ☑ | ☐ | ☐ |

Debtor Name  Preferred Ready-Mix LLC                    Case number  21-33369

17. Have you paid any bills you owed before you filed bankruptcy?          ☐ ☑ ☐
18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?   ☐ ☑ ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

    This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

    2,656.62

20. **Total cash receipts**

    Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

    Report the total from *Exhibit C* here.

    $44,018.10

21. **Total cash disbursements**

    Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

    Report the total from *Exhibit D* here.

    –$18519.39

22. **Net cash flow**

    Subtract line 21 from line 20 and report the result here.
    This amount may be different from what you may have calculated as *net profit*.

    +25,498.71

23. **Cash on hand at the end of the month**

    Add line 22 + line 19. Report the result here.

    Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

    This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

    = $28,155.33

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**          $   0.00

    *(Exhibit E)*

Debtor Name  Preferred Ready-Mix LLC

Case number  21-33369

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy.  Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**

$ 664,359.87

    *(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed?                                    12
27. What is the number of employees as of the date of this monthly report?                       4

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?           $ 0.00
29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?   $ 30,000.00
30. How much have you paid this month in other professional fees?                                      $ 0.00
31. How much have you paid in total other professional fees since filing the case?                     $ 0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

| | Column A | | Column B | | Column C |
|---|---|---|---|---|---|
| | *Projected* | − | *Actual* | = | *Difference* |
| | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. **Cash receipts** | $ 44,018.10 | − | $ 44,018.10 | = | $ 0.00 |
| 33. **Cash disbursements** | $ 18,519.39 | − | $ 18,519.39 | = | $ 0.00 |
| 34. **Net cash flow** | $ 25,498.71 | − | $ 25,498.71 | = | $ 0.00 |

35. Total projected cash receipts for the next month:                               $ 47,865.40
36. Total projected cash disbursements for the next month:                        − $ 26,527.03
37. Total projected net cash flow for the next month:                             = $ 21,338.37

Debtor Name  Preferred Ready-Mix LLC

Case number  21-33369

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☐  38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

☐  39.  Bank reconciliation reports for each account.

☐  40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐  41.  Budget, projection, or forecast reports.

☐  42.  Project, job costing, or work-in-progress reports.

Fill in this information to identify the case:

Debtor Name Preferred Ready-Mix LLC

United States Bankruptcy Court for the: Southern District of Texas

Case number: 21-33369

☐ Check if this is an
amended filing

Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11

12/17

Month: 12/01/2021

Line of business: CONCRETE

Date report filed: 12/01/2021
MM / DD / YYYY

NAISC code: 3273

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party: ROBERT FORAN

Original signature of responsible party

Printed name of responsible party ROBERT FORAN

### 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

| | | Yes | No | N/A |
|---|---|:---:|:---:|:---:|
| | **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A.*** | ☐ | ☑ | ☐ |
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☑ | ☐ | ☐ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☑ | ☐ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☑ | ☐ | ☐ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |
| | **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B.*** | ☐ | ☑ | ☐ |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☑ | ☐ | ☐ |
| 16. | Has anyone made an investment in your business? | | | |

Debtor Name Preferred Ready-Mix LLC

Case number 21-33369

17. Have you paid any bills you owed before you filed bankruptcy? ☐ ☑ ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy? ☐ ☑ ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

$ 28,155.33

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here.

$ 47,865.40

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

Report the total from *Exhibit D* here.

– $ 26,527.03

22. **Net cash flow**

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*.

+ $ 21,338.37

23. **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.

Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

= $ 49,493.70

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**

*(Exhibit E)*

$ 0.00

Debtor Name Preferred Ready-Mix LLC                    Case number 21-33369

### 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy.  Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**                                                          $  664,359.87

   *(Exhibit F)*

### 5. Employees

26. What was the number of employees when the case was filed?                          12
27. What is the number of employees as of the date of this monthly report?             4

### 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?     $  0.00
29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?   $  30,000.00
30. How much have you paid this month in other professional fees?        $  0.00
31. How much have you paid in total other professional fees since filing the case?    $  0.00

### 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

|  | Column A | | Column B | | Column C |
|---|---|---|---|---|---|
|  | **Projected** | — | **Actual** | = | **Difference** |
|  | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. **Cash receipts** | $ 47,865.40 | — | $ 47,865.40 | = | $ 0.00 |
| 33. **Cash disbursements** | $ 26,527.03 | — | $ 26,527.03 | = | $ 0.00 |
| 34. **Net cash flow** | $ 21,338.37 | — | $ 21,338.37 | = | $ 0.00 |

35. Total projected cash receipts for the next month:                    $  0.00
36. Total projected cash disbursements for the next month:             - $  0.00
37. Total projected net cash flow for the next month:                   = $  0.00

Debtor Name  Preferred Ready-Mix LLC

Case number  21-33369

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☐  38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

☐  39.  Bank reconciliation reports for each account.

☑  40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐  41.  Budget, projection, or forecast reports.

☐  42.  Project, job costing, or work-in-progress reports.